THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VALENTINE TORRES, Defendant-Appellant.

Fourth District   No. 4—85—0766

Opinion filed June 3, 1986.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and Linda Welge, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MORTHLAND delivered the opinion of the court:

The Vermilion County circuit court denied the defendant's motion to suppress illegal drugs found in his possession. The court subsequently found the defendant guilty of possession of a controlled substance (Ill. Rev. Stat. 1983, ch. 56½, par. 1402(b)) and possession of cannabis (Ill. Rev. Stat. 1983, ch. 56½, par. 704(c)) and sentenced him to two concurrent one-year terms of probation. The defendant appeals from the court's order denying his motion to suppress. We affirm.

The defendant, testifying at the suppression hearing, stated that he had a history of blackouts and that such a seizure had occurred on the date in question. He testified that he blacked out somewhere in the town of Hoopeston and remembered nothing until he awoke in the emergency room of Hoopeston General Hospital. As he awoke, the defendant stated that Officer Dennis Carter of the Hoopeston police department was present and informed him that "you're in a lot of trouble."

The officer then showed the defendant a plastic bag containing cannabis and a small packet containing a substance later identified as LSD which had been found in the defendant's possession. Subsequently, the defendant was moved to another room within the hospital. The defendant testified that he left the hospital later that evening without being formally discharged. The defendant admits that he had

a plastic bag containing marijuana in a front pants' pocket which was visible to those in the room with him. He also admits that another packet, containing LSD, was in his wallet while at the hospital emergency room.

Sergeant Dennis Carter testified at the suppression hearing on behalf of the State. Carter testified that he had gone to the Hoopeston Hospital emergency room after the city ambulance service informed him that they had taken a male subject to the hospital, suffering from a possible drug overdose. Carter testified that when he arrived, the defendant was in the emergency room and was talking to medical personnel. Carter noticed a plastic bag containing a leafy substance sticking out of the defendant's blue jeans. The officer also noted the odor of burnt cannabis about the defendant. Carter seized the plastic bag containing cannabis and then ordered the defendant to empty his pockets. At that point, according to Carter, the defendant handed him the packet found to contain LSD. Carter testified that he seized only the two packets suspected of containing illicit drugs and that he did not inventory or otherwise take note of other objects found in the defendant's pockets. Carter then left the emergency room and asked hospital personnel to inform him when the defendant was released, as Carter believed it likely the police would arrest the defendant. The officer testified that when he left the hospital emergency room, the defendant was not under arrest.

The statements of various medical personnel present on the afternoon in question were adduced either through in-court testimony, or by stipulation. Dr. H. K. Roy testified that he was on duty when the defendant arrived in the emergency room. Roy described the defendant as semiconscious and stated that although he would respond to painful stimuli, the defendant did not answer verbal commands. The statement of Scott James, an emergency medical technician with the ambulance service, essentially corroborated the testimony of Sergeant Carter. Nurse Juanita Haughee assisted in treating the defendant at the hospital. She stated that the defendant was cooperative and was able to answer questions concerning his name, birth date, and address, as well as sign a consent form for treatment.

The trial court suggested that the defendant might have an expectation of privacy while being treated at the emergency room which would preclude the police officer from being present. Nevertheless, the court determined that the seizure of the baggie containing cannabis was proper since the contraband was in "plain view" of those present in the emergency room. The court determined that the LSD was discovered pursuant to a search, regardless of whether the

defendant handed the packet to Officer Carter. The court upheld this subsequent search as proper, finding that the ease with which the defendant could have destroyed the evidence provided the necessary exigency.

After the court denied the motion to suppress, the court found him guilty of possessing the cannabis and the LSD after a trial on stipulated facts.

■■ ■ An exception to the fourth amendment proscription on unreasonable searches and seizures is that a police officer may seize contraband or other evidence which is in "plain view" if the seized objects can be viewed from a place where the officer has a legal justification for being. (*Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022.) If an area is generally open to the public, a police officer may enter without a warrant, regardless of the fact that it is technically private property. (*People v. Loveless* (1980), 80 Ill. App. 3d 1052, 400 N.E.2d 540.) Even in a public place, a person may be constitutionally protected if he manifests a desire to keep something private. In determining whether a person should receive fourth amendment protection, the United States Supreme Court has formulated two discrete inquiries. First, has the individual shown that he seeks to preserve something as private? Second, is the individual's subjective expectation of privacy one that society is prepared to recognize as reasonable? *Smith v. Maryland* (1979), 442 U.S. 735, 61 L. Ed. 2d 220, 99 S. Ct. 2577.

■■ In seeking to suppress evidence, a defendant bears the burden of establishing that his fourth amendment rights were violated by the search and seizure in question. (*People v. Berg* (1977), 67 Ill. 2d 65, 364 N.E.2d 880.) Specifically, the proponent of a motion must prove that he had a legitimate expectation of privacy as to the items examined by the police. *Rawlings v. Kentucky* (1980), 448 U.S. 98, 65 L. Ed. 2d 633, 100 S. Ct. 2556.

The present facts are not clear, but we will assume for purposes of this appeal that the defendant subjectively expected protection from police scrutiny while in the hospital emergency room.

Nevertheless, we do not believe that an expectation of privacy in a hospital emergency room is objectively reasonable. The defendant correctly argues that an emergency room is not open to the general public in the sense that anyone may wander through at will. However, access to any emergency room by persons other than those seeking treatment is controlled by medical personnel for the purpose of enhancing their ability to treat patients. The present record contains no suggestion that the defendant was in a position to either permit or

deny anyone, including a police officer, access to the emergency room. Moreover, Illinois law requires medical personnel to inform authorities of any person requesting treatment when their injuries may have been caused by criminal conduct. (Ill. Rev. Stat. 1983, ch. 38, par. 206—3.2.) One obvious consequence of requiring such reports is that police officers will begin their investigations at the medical facility. See *People v. Sutherland* (1980), 92 Ill. App. 3d 338, 415 N.E.2d 1267; *People v. Miller* (1974), 19 Ill. App. 3d 103, 311 N.E.2d 179.

■ We conclude that the defendant had no reasonable expectation of privacy in the hospital emergency room. Accordingly, Officer Carter properly seized the bag of cannabis, which the defendant concedes was in plain view of those in the emergency room. This holding is not, as the defendant would suggest, an open invitation for the police to rifle the belongings of emergency-room patients. Had this contraband been in a closed container, screened from public scrutiny, the defendant might successfully argue that an unreasonable search and seizure had occurred. However, since Officer Carter was legally present in the emergency room, he properly seized the contraband.

■■ ■ We also conclude that Officer Carter properly conducted the search which led to discovery of LSD on the defendant's person. The defendant exhibited symptoms consistent with an overdose of drugs. In addition, Officer Carter smelled burnt cannabis on the defendant's person and observed a substance he believed to be marijuana in the defendant's pocket. These circumstances clearly provided probable cause sufficient to obtain a search warrant. (*People v. Eichelberger* (1982), 91 Ill. 2d 359, 438 N.E.2d 140, *cert. denied* (1982), 459 U.S. 1019, 74 L. Ed. 2d 514, 103 S. Ct. 383.) Moreover, we believe the trial court properly determined that the possibility that evidence might be destroyed justified an immediate search. *People v. Blake* (1981), 93 Ill. App. 3d 538, 417 N.E.2d 682.

For the foregoing reasons, we conclude the trial court properly refused to suppress the evidence against the defendant. Accordingly, we affirm his conviction for possession of illegal drugs.

Affirmed.

WEBBER and SPITZ, JJ., concur.