[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 638 
The appellant, Winfred Lynn Woods, was convicted of unlawful possession of a controlled substance, a violation of §13A-12-212, Ala. Code 1975. He was sentenced as a habitual felony offender to 15 years in the penitentiary.
 I.
The appellant contends that the trial court's denial of his motion to suppress evidence of the heroin seized by a police officer during a warrantless search of the appellant while the appellant was being treated for a drug overdose in the emergency room of the Eliza Coffee Memorial Hospital was reversible error. The following facts were adduced from the evidence presented at the hearing on the appellant's motion to suppress and at trial.
Harry McGee, a deputy sheriff in the Lauderdale County Sheriffs Department, testified that at approximately 8:00 p.m. on March 28, 1994, he responded to a police dispatch requesting assistance at the appellant's residence. He was informed by the dispatcher that the appellant was comatose as the result of a possible drug overdose. Officer Lee Short and Investigator Junior Witt arrived at the appellant's house at approximately the same time as McGee. The appellant's girlfriend was also at the scene and his sister arrived soon after. McGee stated that he knew the appellant but McGee was not asked whether the appellant had a reputation for drug use. McGee stated that when he arrived the appellant was lying on the back porch and that the appellant appeared dead. The ambulance arrived and Phillip Richardson, a member of the ambulance crew, worked for 10 or 15 minutes reviving the appellant before taking him to the hospital. In the ambulance Richardson gave the appellant the drug called Narcan, which "totally reverses the effect of [a] narcotic" such as heroin. R. 100. In less than a minute after the drug was administered, the appellant woke up. Initially, the appellant was "combative," according to Richardson, a natural response for someone who regains consciousness while intubated. Upon awaking, the appellant told Richardson that he had not taken any medications; however, he confirmed that he had taken heroin. R. 101.
McGee remained at the appellant's house for a few minutes after the ambulance left. During that time, an anonymous telephone caller informed the appellant's sister that the appellant had taken heroin. She relayed this information to Investigator Witt who apparently relayed it to McGee. R. 44. McGee stated that he did not know if this information was accurate. The ambulance crew was informed of this information. McGee followed the ambulance to the hospital and went into the emergency room with the ambulance crew. Richardson told McGee that the appellant "admitted to him in the ambulance that he had taken heroin." R. 13-14.
The appellant was lying on his back in a bay room in the emergency room but he "had come around somewhat" and was able to respond to the doctors. R. 12, 14. However, McGee also stated that he could not say "that [the appellant] was alert," only that the appellant was conscious. R. 18. When asked why he did not ask the appellant to empty his pockets McGee stated that hospital personnel were "working on him" trying to start an IV, a cardiac monitor, and a blood pressure monitor. R. 16, 26. As hospital personnel began to remove the appellant's clothes, McGee asked Richardson whether Richardson "had searched through the patient's pockets, and [Richardson] said he had not." R. 18. McGee asked the hospital personnel at that time if the belongings in the appellant's pockets had been secured. R. 12. He was informed they had not. McGee stated that there was nothing about the appellant at this time that led him to believe the appellant ought to be placed under arrest and he did not he have any intentions of arresting the appellant. R. 15. However, McGee testified that at this time he "turned [the appellant] up enough where [he] could reach in [the appellant's back] pocket." He removed an envelope while the appellant was being *Page 639 
"worked on" by nurses. R. 16, 19. McGee stated that, "the purpose of my searching him was to do an inventory of his belongings and to make sure that there were no weapons of any kind, and to give his personal belongings to his family." R. 16. Asked if it was the hospital's job to inventory the appellant's belongings (given that the appellant was not under arrest, was not suspected of wrongdoing, and was under the hospital's care), McGee answered, "possibly." R. 21, 22.
The envelope removed from the appellant's back pocket had been closed and folded several times, but it was not sealed. McGee testified that there was nothing about the envelope to indicate that it contained drugs but because he felt a bulge inside the envelope he opened it to see what was inside. R. 23. When asked why opening the envelope was part of his "physical inventory," McGee answered, "It just was. I felt that bulge in there, and I opened it to see what it was." R. 23. McGee stated that it was "professional curiosity" that prompted him to open the envelope. R. 23. McGee had not been told that the appellant was in possession of heroin. The appellant's sister and his girlfriend, with whom he lived, were at the emergency room and could have received the contents of his pockets from hospital personnel. An officer did turn over the contents of the appellant's pockets, except for the envelope, to the appellant's girlfriend while she was at the emergency room. The hospital allowed the appellant to go home approximately eight hours later, at about 4:30 a.m.
The trial court denied the appellant's motion to suppress. The evidence presented at trial was not significantly different from that presented at the hearing on the motion to suppress. The heroin was admitted into evidence at trial over the appellant's objection. R. 115-16.
The hospital policy concerning inventorying patients belongings is not contained in the record. However, we do not see how the police acquired responsibility for the appellant's belongings. In South Dakota v. Opperman, 428 U.S. 364,96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the United States Supreme Court allowed such inventory searches where intended to (1) protect the owner's property while it was in police custody, (2) protect the police against claims or disputes over lost or stolen property, and (3) protect the police from potential danger. At the time of the alleged inventory the appellant was not in police custody. He was a patient in the hospital emergency room. Under the circumstances, we do not see on whose authority or for whose benefit McGee inventoried the contents of the appellant's pockets. The warrantless search of the appellant's pockets was not a valid inventory search.[1]
Additionally McGee stated that his professional curiosity prompted his opening the envelope — an inventory of the appellant's pockets.
Also, at the time of the search the appellant's identity was known, he was accompanied by family, he was being cared for by emergency room personnel, and there was no suggestion that he was dangerous or armed; this is not an "instance in which the nature of a police officer's duty require[d] that he engage in [a] search for reasons other than obtaining evidence of criminal activity." Wagner v. Hedrick, 181 W. Va. 482,383 S.E.2d 286 (1989) (evidence of crime discovered during officer's good faith search of accident victim's pants for victim's identification was admissible).[2] Therefore, the warrantless search of the appellant must be justified *Page 640 
under some exception to the warrant requirement.
 "Warrantless searches and seizures are 'per se unreasonable.' . . . To validate the seizure of one's person or property by such means, the search and seizure must fall within one of the well-recognized exceptions, which are: (1) plain view; (2) voluntary, intelligent, and knowing consent; (3) incident to a lawful arrest; (4) hot pursuit or emergency situations; (5) exigent circumstances coupled with probable cause; and (6) stop and frisk situations."
Cowart v. State, 579 So.2d 1, 3 (Ala.Cr.App. 1990) (citations omitted). "The burden is on the State to make such a showing that the warrantless search meets an exception." Sawyer v.State, 456 So.2d 114, 115 (Ala.Cr.App. 1984). The State argues that the warrantless search of the appellant's person was justified under the probable-cause-coupled-with-exigent-circumstances exception to the warrant requirement. "[B]ecause the test for determining probable cause is an objective and not a subjective test, this court may ' "find probable cause in spite of an officer's judgment that none exists." ' " Hopkins v. State,661 So.2d 774, 779 (Ala.Cr.App. 1994) (citations omitted). Therefore, in determining whether probable cause existed we are not constrained by McGee's testimony that he had no suspicions concerning the appellant. "As long as the police officer is doing only what is objectively authorized and legally permitted, the officers subjective intent in doing it is irrelevant." Hutcherson v. State. 677 So.2d 1174
(Ala.Cr.App. 1994) (an objective test is used for determining whether an arrest is pretextual), rev'd on other grounds677 So.2d 1205 (Ala. 1996).
 "Whether there is probable cause of merit a warrantless search and seizure is to be determined by the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527
(1983). 'Probable cause exists where all the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and that contraband would be found in the place to be searched.' Sheridan v. State, 591 So.2d 129, 130 (Ala.Crim.App. 1991)."
State v. Stallworth, 645 So.2d 323, 325 (Ala.Cr.App. 1994). Stated another way, "[t]he test for probable cause is 'whether the facts available to the officer at the moment of the seizure or search, would warrant a man of reasonable caution to believe that the action taken was appropriate.' " Ivey v. State, [Ms. CR-93-0659, November 9, 1995] ___ So.2d ___ (Ala.Cr.App. 1995) (citations omitted). "Probable cause exists when the facts and circumstances within the knowledge of the officers and of which they had reasonably trustworthy information are sufficient to cause the officers to conscientiously entertain a strong suspicion that the object of the search is in the particular place to be searched." Sterling v. State, 421 So.2d 1375, 1381
(Ala.Cr.App. 1982). "The requisite probable cause is present 'if a reasonably prudent person, based on the facts and circumstances which the officer knows, would be justified in concluding that the items sought are connected with criminal activity and that they will be found in the place to be searched.' " Day v. State, 539 So.2d 410, 413-14
(Ala.Cr.App. 1988). "When we speak of probable cause, we are dealing with probabilities which are factual and practical considerations of everyday experience." Sterling, 421 So.2d at 1381. We would not find probable cause to conduct a warrantless search based on only a medical diagnosis that a defendant had suffered a drug overdose, or based only on an anonymous telephone call stating that a defendant had recently taken heroin, nor would we conclude that probable cause existed based on any single circumstance listed in this opinion. Our finding of probable cause in this case is not, "an open invitation for the police to rifle the belongings of emergency room patients."People v. Torres, 98 Ill.Dec. at 633, 494 N.E.2d at 755. We are only holding that based on the totality of the circumstances in this case, probable cause existed to justify McGee's search of the appellant. Here, the dispatcher stated that McGee was needed at the scene of a possible drug overdose, an anonymous telephone caller stated that the appellant had taken heroin, the ambulance driver told McGee that the *Page 641 
appellant admitted taking heroin,[3] and the appellant's physical condition was consistent with someone suffering from a possible drug overdose. Additionally, the appellant became unconscious after he admittedly had taken heroin. While unconscious he was taken by ambulance to the emergency room. It was reasonable for McGee to conclude that the appellant may still be in possession of heroin at the emergency room. We conclude that the totality of the circumstances were sufficient to allow McGee to believe that the appellant had been in possession of heroin and may still have heroin in his possession.
Exigent circumstances also existed; "[e]xigent circumstances exist whenever an object to be searched is mobile or moveable. . . ." Day v. State, 539 So.2d 410, 414 (Ala.Cr.App. 1988). The closed envelope that contained the heroin was movable. It could have been discovered at any time by hospital personnel and given to the appellant's sister or girlfriend, who could have then disposed of it. It appears from the record that the appellant was not in any condition to leave the hospital at the time of the search. However, his condition was apparently improving. The appellant might have disposed of the heroin, or he might have left the hospital. As persuasive authority we cite the case of People v. Torres, 144 Ill. App.3d 187, 98 Ill.Dec. 630, 494 N.E.2d 752 (4 Dist. 1986). In Torres the appellant was suspected of suffering from a drug overdose and was taken by ambulance to a hospital emergency room. Torres's physical condition was factually similar to the appellant's in the present case.[4] The appellate court in Torres found that the trial court had correctly ruled that LSD discovered pursuant to a police search was proper because "the ease with which the defendant could have destroyed the evidence provided the necessary exigency." Torres 98 Ill.Dec. at 632, 494 N.E.2d at 754.
"[P]robable cause combined with the existence of exigent circumstances justifies a warrantless search." Wedgeworth v.State, 610 So.2d 1244, 1247 (Ala.Cr.App. 1992). Here, probable cause and exigent circumstances existed justifying an immediate warrantless search of the appellant. Because McGee was justified in searching the appellant he had no reason to delay the search absent a request from hospital personnel. We assume that had McGee's actions endangered the appellant or hampered the work of the care givers he would have been asked to stop. However, even that circumstance *Page 642 
would not change the fact that an immediate search was justified.
Because the search was justified, opening the envelope was justified. "If probable cause justifies the search . . . it justifies the search of every part of the [person and] . . . contents that may conceal the object of the search." State v.Betterton, 527 So.2d 743, 746 (Ala.Cr.App. 1986), aff'd.527 So.2d 747 (Ala. 1988). Based on the above, we find no error with the ruling of the trial court admitting the heroin into evidence.
 II.
The State has correctly pointed out that in sentencing the appellant the trial court inadvertently neglected to impose the fine found in § 13A-12-281(a), Ala. Code 1975, which must be assessed against a defendant guilty of violating § 13A-12-212, Ala. Code 1975. Pierson v. State, 677 So.2d 246 (Ala. 1995). Therefore we must remand this case for additional sentencing in compliance with § 13A-12-281(a), Ala. Code 1975. The court is ordered to assess a penalty under the Demand Reduction Assessment Act, § 13A-12-281(a), Code of Alabama 1975. The trial court shall take necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 42 days of the release of this opinion.
AFFIRMED; REMANDED FOR PROPER SENTENCING.*
All the Judges concur except TAYLOR, P.J., who dissents with opinion.
[1] However, "[a]n inventory initiated pursuant to hospital policy for the protection of the hospital and the appellant's property" would not violate the appellant's fourth amendment rights. Vargas v.State, 542 S.W.2d 151, 155 (Tex. 1976), cert. denied,429 U.S. 1109, 97 S.Ct. 1144, 51 L.Ed.2d 562 (1977) (a hospital inventory begun by hospital personnel and continued by a hospital security guard and a police officer after the discovery of a gun in the patient's pants pocket was upheld because it was necessary for the protection and safety of the hospital's personnel and other patients).
[2] Hospital personnel could have conducted a valid inventory search. Illinois v. Andreas, 463 U.S. 765, 103 S.Ct, 3319,77 L.Ed.2d 1003 (1983) (search by a private citizen, not acting as police agent, does not bring the Fourth Amendment into operation).
[3] We do not wish to "chill" a patient's willingness to provide vital information to a caregiver but, "The veracity of the 'citizen-informant' is easily established for 'the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case.' " McCoy v. State,651 So.2d 1149, 1150 (Ala.Cr.App. 1994).
[4] In Torres, a police officer, Officer Carter, who was present in the emergency room, seized cannabis seen hanging out of the appellant's pocket. Officer Carter then ordered Torres to empty his pockets and Torres handed him a packet of LSD.
 The appellate court concluded that Torres, "had no reasonable expectation of privacy in the emergency room. Accordingly, Officer Carter properly seized the bag of cannabis which the defendant concedes was in plain view of those in the emergency room. This holding is not, as the defendant would suggest, an open invitation for the police to rifle the belongings of emergency room patients. Had this contraband been in a closed container, screened from public scrutiny, the defendant might successfully argue that an unreasonable search and seizure had occurred. However, since Officer Carter was legally present in the emergency room, he properly seized the contraband.
 "We also conclude that Officer Carter properly conducted the search which led to discovery of LSD on the defendant's person. The defendant exhibited symptoms consistent with an overdose of drugs. In addition, Officer Carter smelled burnt cannabis on the defendant's person and observed a substance believed to be marijuana in the defendant's pocket. These circumstances clearly provided probable cause sufficient to obtain a search warrant. . . . Moreover, we believe the trial court properly determined that the possibility that evidence might be destroyed justified an immediate search."
Torres, 98 Ill.Dec. at 633, 494 N.E.2d at 755.
In Torres, the cannabis was seized under the plain view exception to the warrant requirement and the LSD was seized under the probable cause and exigent circumstance exception to the warrant requirement. In the present case, even though the heroin was screened from public scrutiny, probable cause and exigent circumstances existed, as with the LSD inTorres, allowing a warrantless search.
* Note from the Reporter of Decisions: On November 22, 1996, on return to remand, the Court of Criminal Appeals affirmed, without opinion, and on January 17, 1997, that court denied rehearing, no opinion.