Argued and submitted March 31, affirmed June 11, petition for review denied
October 15, 2008 (345 Or 381)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL JAMES CROMB,
aka Arthur John Cromb,
*Defendant-Appellant.*

Multnomah County Circuit
0401-30254, 0401-30440
A129799 (Control); A130120

185 P3d 1120

Tammy W. Sun, Deputy Public Defender, argued the cause for appellant. On the brief were Ingrid Swenson, Executive Director, Peter Gartlan, Chief Defender, Legal Services Division, and Stephanie Hortsch, Deputy Public Defender, Office of Public Defense Services.

David B. Thompson, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge, and Wollheim, Judge.

BREWER, C. J.

**BREWER, C. J.**

A police officer walked into the area of a hospital emergency room where defendant was being treated after a car accident. The officer observed defendant's vital signs and medical staff's diagnosis of his condition and, thereafter, obtained a sample of defendant's urine for chemical testing. ORS 813.140.[1] A grand jury indicted defendant for, among other offenses, driving under the influence of intoxicants (DUII). ORS 813.010. Defendant filed a motion to suppress the test results of the urine sample, asserting that the investigating officer's warrantless observations in the emergency room that led to the seizure of the urine sample violated his rights to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and Article I, section 9, of the Oregon Constitution. The trial court denied the motion, and defendant was convicted based on his ensuing conditional guilty plea. On appeal, he assigns error to the denial of his motion to suppress. We affirm.

We review the denial of a motion to suppress for errors of law, and we are bound by the trial court's findings of historical fact as long as there is constitutionally sufficient evidence in the record to support those findings. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). We presume that the court found the facts in a manner that is consistent with

---

[1] ORS 813.140 provides:

"Nothing in ORS 813.100 is intended to preclude the administration of a chemical test described in this section. A police officer may obtain a chemical test of the blood to determine the amount of alcohol in any person's blood or a test of the person's blood or urine, or both, to determine the presence of a controlled substance or an inhalant in the person as provided in the following:

"(1) If, when requested by a police officer, the person expressly consents to such a test.

"(2) Notwithstanding subsection (1) of this section, from a person without the person's consent if:

"(a) The police officer has probable cause to believe that the person was driving while under the influence of intoxicants and that evidence of the offense will be found in the person's blood or urine; and

"(b) The person is unconscious or otherwise in a condition rendering the person incapable of expressly consenting to the test or tests requested."

its ultimate conclusion. *State v. Ready*, 148 Or App 149, 153-54, 939 P2d 117, *rev den*, 326 Or 68 (1997). The facts we state are either undisputed or are binding upon us because they are taken from those found by the trial court.

Officer Johnson was dispatched to a hospital to contact defendant regarding a DUII investigation. Johnson learned from an officer at the scene that defendant's car had crashed into a telephone pole. Johnson found defendant in a hospital emergency room. The emergency room is open to the public; anyone can enter. However, there are areas within the emergency room that can be curtained off. Johnson found defendant in a bed in one of those areas. Defendant testified that the curtain was closed when Johnson entered the area. However, defendant also testified that he knew that hospital personnel, not defendant himself, had control over who was present in the emergency room.

Johnson observed a blood pressure monitor indicating that defendant's pulse rate was near the high end of the normal range but that his blood pressure was significantly subnormal. Johnson asked defendant for permission to check his pupils. At that point, a medical staff person said that defendant's vital signs were getting too low and voiced suspicion that there was a narcotic analgesic in his system. Based on his own observations, the information from medical staff, and his knowledge of the circumstances of the accident, Johnson concluded that he had probable cause to believe that defendant had been driving under the influence of intoxicants. Johnson asked the medical staff to retain defendant's urine bag and withdraw a sample for testing. They complied.

At the suppression hearing, Johnson testified that, in the previous year, he had responded to the same hospital emergency room between six and 12 occasions to conduct investigations. None of the personnel there—whether technicians, doctors, or nurses—had ever excluded him or denied him access to any of the treatment areas. Johnson testified that he had a "working relationship with the emergency room technicians," who gave him access for investigative purposes to anyone who was receiving treatment in the emergency room.

In his motion to suppress, defendant argued that he had a constitutionally protected privacy interest in the area of the emergency room where he was being treated and that the officer's entry into that area and his observations of defendant's condition constituted a warrantless search that violated that interest. Defendant also argued that the chemical test of his urine sample was inadmissible under ORS 813.140, because, without the challenged observations, the officer lacked probable cause under the statute to seize the sample.

After hearing the evidence, the trial court denied defendant's motion. The court adopted the state's theory that (1) defendant had no protected privacy interest in the hospital emergency room and, thus, Johnson's entry into the area where defendant was being treated and the observations that he made there did not constitute a search under the United States or Oregon constitution; or (2) even if defendant had such a privacy interest, the officer lawfully conducted his "search" based on valid third-party consent by the medical staff; and (3) the seizure of defendant's urine sample for chemical testing was lawful under either ORS 813.140 or ORS 813.320.[2] After the court ruled, defendant entered his conditional guilty plea, and the court entered a judgment convicting him of DUII.

The parties renew their respective arguments on appeal. We begin with defendant's argument that Johnson engaged in a search for purposes of Article I, section 9, of the Oregon Constitution. *See State v. Kennedy*, 295 Or 260, 265, 666 P2d 1316 (1983) (courts address state constitutional issues before those under the federal constitution).

---

[2] ORS 813.320 provides, in part:

"(2) The provisions of the implied consent law shall not be construed by any court to limit the introduction of otherwise competent, relevant evidence of the amount of alcohol in the blood of a defendant in a prosecution for driving while under the influence of intoxicants if:

"(a) The evidence results from a test of blood taken from the defendant while the defendant was hospitalized or otherwise receiving medical care, whether or not the defendant consented to the drawing of blood or to the test; or

"(b) The evidence is obtained pursuant to a search warrant."

■ Article I, section 9, protects against unreasonable searches and seizures. *State v. Campbell*, 306 Or 157, 163, 759 P2d 1040 (1988). "A 'search' occurs when a person's privacy interests are invaded." *State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986). "A privacy interest * * * is an interest in freedom from particular forms of scrutiny." *Campbell*, 306 Or at 170. *Campbell* did not announce a one-size-fits-all test for privacy interests protected under Article I, section 9; cases decided both before and after *Campbell* have assessed the existence of a protected privacy interest "in light of the particular context in which the government conduct occurred." *State v. Meredith*, 337 Or 299, 306, 96 P3d 342 (2004). We apply an objective test to determine whether a search occurred by asking whether the state's conduct significantly impairs "an individual's interest in freedom from scrutiny[.]" *State v. Dixson/Digby*, 307 Or 195, 211, 766 P2d 1015 (1988). Privacy interests generally are not self-announcing and, with a few possible exceptions, can be recognized only by their association with a private place where the claimant has the right to exclude others. *Campbell*, 306 Or at 170-71; *see also Dixson/Digby*, 307 Or at 211-12.

It follows that whether defendant here had a protected privacy interest in the area of the emergency room where he was being treated turns on whether that area was essentially a private place where he was entitled to freedom from scrutiny. According to defendant, even though it was located within a hospital open to the public, the space in which Johnson found him was private, because it was a curtained-off area where he was receiving medical treatment. Defendant argues that "health information is particularly sensitive and should be treated confidentially with safeguards to prevent disclosure without an individual's consent," as demonstrated by ORS 192.518 and ORS 192.520, which provide an individual protection from the unauthorized use or disclosure of health information.[3]

---

[3] ORS 192.518(1) provides:

"It is the policy of the State of Oregon that an individual has:

"(a) The right to have protected health information of the individual safeguarded from unlawful use or disclosure; and

"(b) The right to access and review protected health information of the individual."

■ Before addressing the merits of defendant's arguments, we pause to consider the relationship between the prescribed analysis under Article I, section 9, and the pertinent test under the Fourth Amendment. This court sometimes has stated that an indication of whether police conduct constitutes a search for purposes of Article I, section 9, is "whether a private individual would offend social and legal norms of behavior by engaging in the same kind of intrusion." *State v. Portrey*, 134 Or App 460, 464, 896 P2d 7 (1995). That statement derives from *Campbell*, 306 Or at 170, and the Supreme Court has adhered to it in later decisions. *See, e.g., State v. Howard/Dawson*, 342 Or 635, 642, 157 P3d 1189 (2007). However, viewed in isolation, it expresses an incomplete understanding of the relationship between social and legal norms of behavior and individual privacy interests. In *Campbell*, the court also said:

---

ORS 192.520 provides:

"A health care provider or state health plan:

"(1) May use or disclose protected health information of an individual in a manner that is consistent with an authorization provided by the individual or a personal representative of the individual.

"(2) May use or disclose protected health information of an individual without obtaining an authorization from the individual or a personal representative of the individual:

"(a) For the provider's or plan's own treatment, payment or health care operations; or

"(b) As otherwise permitted or required by state or federal law or by order of the court.

"(3) May disclose protected health information of an individual without obtaining an authorization from the individual or a personal representative of the individual:

"(a) To another covered entity for health care operations activities of the entity that receives the information if:

"(A) Each entity has or had a relationship with the individual who is the subject of the protected health information; and

"(B) The protected health information pertains to the relationship and the disclosure is for the purpose of:

"(i) Health care operations as listed in ORS 192.519 (4)(a) or (b); or

"(ii) Health care fraud and abuse detection or compliance;

"(b) To another covered entity or any other health care provider for treatment activities of a health care provider; or

"(c) To another covered entity or any other health care provider for the payment activities of the entity that receives that information."

"Our intention is not to set forth a definition of search based upon social and legal norms of behavior but to clarify the nature of the interest protected by Article I, section 9. Social and legal norms cannot govern the scope of the constitutional provision, which itself plays a substantial role in shaping those norms."

*Campbell*, 306 Or at 171; *see also State v. Rodriguez-Ganegar*, 186 Or App 530, 534-35 n 2, 63 P3d 1225 (2003). Thus, societal expectations do not necessarily translate into a protected privacy interest under Article I, section 9. *See Howard/Dawson*, 342 Or at 643 (declining to decide whether the defendant's subjective expectations of privacy were reasonable, because the privacy protected by Article I, section 9, is not the privacy that one reasonably expects but the privacy to which one has a right).

 Unlike Article I, section 9, the Fourth Amendment protects a person's reasonable expectation of privacy. *See Oliver v. United States*, 466 US 170, 177, 104 S Ct 1735, 80 L Ed 2d 214 (1984) (so stating). Accordingly, Fourth Amendment case law does not govern the analysis under Article I, section 9. Nonetheless, as discussed, societal norms are enmeshed with the determination whether a privacy interest exists under Article I, section 9. *Howard/Dawson*, 342 Or at 642-43. Such norms, in turn, generally establish whether, under the Fourth Amendment, a reasonable expectation of privacy exists. *See Oliver*, 466 US at 178 (explaining that the Fourth Amendment analysis must turn on such factors as "our societal understanding that certain areas deserve the most scrupulous protection from government invasion"); *see also Dow Chemical Co. v. United States*, 476 US 227, 248, 106 S Ct 1819, 90 L Ed 2d 226 (1986); *Robbins v. California*, 453 US 420, 428, 101 S Ct 2841, 69 L Ed 2d 744 (1981) (plurality opinion) ("Expectations of privacy are established by general social norms[.]"). At least to some extent, then, Fourth Amendment cases involving factual circumstances similar to those at issue in this case can offer guidance in assessing whether the state violated defendant's privacy interest. Mindful of the differences in the constitutional tests, we now examine several of those decisions.

In *State v. Rheaume*, 179 Vt 39, 889 A2d 711 (2005), the Vermont Supreme Court held that the defendant had no

reasonable expectation of privacy in a hospital's "trauma room," which was a curtained area containing two beds located within the emergency room, and, as such, the police officer's warrantless entry into that area did not violate the prohibitions of the Fourth Amendment and the Vermont Constitution against unreasonable searches and seizures. The court stated that the constitutional prohibitions against unreasonable searches and seizures require, first, that a person has exhibited an actual, subjective expectation of privacy and, second, that the expectation be one that society is prepared to recognize as reasonable. *Id.* at 713. As pertinent here, the court observed:

> "Nor has defendant demonstrated that society recognizes an objective, reasonable expectation of privacy in the emergency treatment area of a hospital, which, 'by its very nature, functions as a freely accessible area over which a patient has no control and where his privacy is diminished.' *State v. Stott*, 171 NJ 343, 794 A2d 120, 127 (2002). We have consistently held that a person cannot rely on constitutional search and seizure provisions 'to protect areas or activities that have been willingly exposed to the public.' [*State v.*] *Geraw*, 173 Vt [350,] 352, 795 A2d [1219,] 1221 [(2002)]. While it is true that the public at large may not freely access the emergency area, medical personnel, hospital staff, patients and their families, and emergency workers—including police officers—are, as a matter of course, frequently, and not unexpectedly, moving through the area. Unlike a private hotel room, *United States v. Jeffers*, 342 US 48, 51-52, 72 S Ct 93, 96 L Ed 59 (1951), a private business office, *O'Connor v. Ortega*, 480 US 709, 718-19, 107 S Ct 1492, 94 L Ed 2d 714 (1987), or a private hospital room, *Morris v. Commonwealth*, 208 Va 331, 157 SE2d 191, 194 (1967), an emergency treatment area, or a 'trauma room' located therein, is, for purposes of constitutional privacy protections, 'public' and can afford no reasonable expectation of privacy. *See, e.g., Matthews v. Commonwealth*, 30 Va App 412, 517 SE2d 263, 264 (1999) (holding that defendant had no reasonable expectation of privacy in a treatment room within the emergency ward); *accord Buchanan v. State*, 432 So2d 147, 148 (Fla App 1983); *People v. Torres*, 144 Ill App 3d 187, 98 Ill Dec 630, 494 NE2d 752, 755 (1986); *State v. Thompson*, 222 Wis 2d 179, 585 NW2d 905, 911 (1998). Against this background, a patient undergoing treatment for only a brief period of time

cannot reasonably expect either to restrict access to the area, or to control whether other patients, their families, or the other categories of personnel mentioned above are present in the area. Therefore, defendant did not enjoy an objective, reasonable expectation of privacy in the emergency ward treatment room, where 'conversations are subject to the eyes and ears of passersby.' *State v. Brooks*, 157 Vt 490, 493, 601 A2d 963, 964 (1991)."

*Rheaume*, 889 A2d at 714.

Similarly, in *Buchanan v. State*, 432 So 2d 147 (Fla Dist Ct App 1983), the defendant was involved in an automobile accident. He was transported to a hospital for treatment of his injuries and, once there, he was placed in a curtained-off area in the emergency room. A nurse assisted the defendant in removing his clothes. While doing so, she noticed a bag of pills sticking out of the back of his underwear. Suspecting that the bag contained illegal drugs, she notified a police officer who was in the building. When the nurse and the officer returned to the curtained-off area, the defendant was sitting up on the bed with his hands underneath the mattress. The nurse walked over to the bed, placed her hand underneath the mattress, and retrieved the bag that she had previously seen in the defendant's underwear. The bag was later found to contain a controlled substance.

The defendant contended that the seizure of the pills violated his right to be free from unreasonable searches and seizures guaranteed by the federal and state constitutions. The court disagreed:

"Before a defendant can challenge the legality of a search, he must have had a subjective expectation of privacy in the area searched, and that expectation must be one that society is prepared to recognize as reasonable. Even if [the defendant] had formed a subjective expectation of privacy, it was simply unreasonable for him to have done so in a busy hospital emergency room where medical personnel were constantly walking in and out and where he could have expected to remain only a few hours at most."

*Id.* at 148 (citation omitted).

In *People v. Torres*, 144 Ill App 3d 187, 494 NE 2d 752 (1986), a semi-conscious defendant was brought to a hospital emergency room for treatment of a suspected drug overdose. A police officer entered the emergency room, noticed a bag of marijuana protruding from the defendant's pocket, and seized the marijuana. The court upheld the seizure, with reasoning applicable to the present circumstances:

> "[W]e will assume for purposes of this appeal that the defendant subjectively expected protection from police scrutiny while in the hospital emergency room.
>
> "Nevertheless, we do not believe that an expectation of privacy in a hospital emergency room is objectively reasonable. The defendant correctly argues that an emergency room is not open to the general public in the sense that anyone may wander through at will. However, access to any emergency room by persons other than those seeking treatment is controlled by medical personnel for the purpose of enhancing their ability to treat patients. * * *
>
> "We conclude that the defendant had no reasonable expectation of privacy in the hospital emergency room. * * * This holding is not, as the defendant would suggest, an open invitation for the police to rifle the belongings of emergency room patients. Had this contraband been in a closed container, screened from public scrutiny, the defendant might successfully argue that an unreasonable search and seizure had occurred."

*Id.* at 755.

The reasoning in *Rheaume*, *Buchanan*, and *Torres* suggests that prevailing social norms do not treat a hospital emergency room, even curtained areas within it, as space in which privacy rights inhere. That conclusion is consistent with the rights-based analysis required under Article I, section 9. Defendant acknowledged that hospital personnel—not defendant himself—had control over who was present in that area. That factor is significant in this case. As discussed, with a few possible exceptions, privacy interests can be recognized only by their association with a *private* place where the claimant has the right to exclude others. *Campbell*, 306 Or at 170-71; *see also Dixson/Digby*, 307 Or at 211-12. The hospital emergency room in this case, even a curtained-off

portion of it, is not a private place. A patient such as defendant who undergoes treatment there has no right to restrict access to a busy hospital emergency room by controlling whether other patients, their families, or hospital personnel and other emergency workers, including police officers, may be present in the area.

Nor do the statutes on which defendant relies, ORS 192.518 and ORS 192.520, compel a different conclusion. First, we construed similarly worded predecessors to those statutes, *former* ORS 192.525, *repealed by* Or Laws 2003, ch 86, § 8, and *former* ORS 192.530, *repealed by* Or Laws 2003, ch 86, § 8, in *State v. Gonzalez*, 120 Or App 249, 255-56, 852 P2d 851, *rev den*, 318 Or 61 (1993). We concluded that those statutes "create[d] a legislative policy of confidentiality for medical records created by third persons * * * [but] d[id] not create constitutionally protected privacy or possessory interests" under Article I, section 9. Second, even though those statutes reflect societal norms that safeguard the confidentiality of certain personal medical information, they do not speak to the problem at hand. In that regard, we are persuaded by the reasoning of the Wisconsin Court of Appeals in *State v. Thompson*, 222 Wis 2d 179, 585 NW2d 905 (Wis Ct App), *rev den*, 222 Wis 2d 675 (1998).

In *Thompson*, the court affirmed the defendant's conviction for obstructing an officer and possession of a controlled substance. The court concluded that a police officer's collection of evidence from the emergency and operating rooms of the hospital, where the defendant was being treated for a drug overdose, was not a "search" under the Fourth Amendment. The court reasoned that the defendant had no reasonable expectation of privacy in the emergency room or operating room. The court concluded that the fact that the hospital operating rooms and emergency rooms were closed to the general public for reasons of confidentiality and to maintain sterile conditions did not render the police officer's observing surgery and seizing cocaine after it was removed from the defendant an invasion of the defendant's reasonable expectation of privacy under the Fourth Amendment. The court explained:

"We recognize that historical notions of privacy generally accord patients a significant measure of privacy in their medical treatment. [Two Wisconsin medical privacy statutes] are certainly embodiments of these historical notions of privacy. Hospital treatment areas are not public thoroughfares to which all manner of persons have unfettered access. We conclude, however, that historical notions of privacy are not offended when a police officer, in responding to an emergency call and with the acquiescence of hospital staff, enters the treatment area of an emergency room. Nor are historical notions of privacy offended when an officer observes a surgical procedure with the permission of the operating surgeon, given a patient's traditional surrender to his or her physician of the right to determine who may and may not be present during medical procedures. If medical personnel violated confidentiality laws or ethical obligations by permitting the officer to be present, [the defendant] may be entitled to redress in another forum. We conclude, however, that * * * society would [not] recognize as reasonable [the defendant's] asserted expectation of privacy in the emergency and operating rooms."

*Id.* at 911.

■ So, too, here. If a health care provider unlawfully discloses health information that is protected under ORS 192.518 or ORS 192.520, the possible availability of legal redress for such a violation does not create a constitutionally protected privacy interest for the temporary occupants of a hospital emergency room. We conclude that the officer's presence and observations in the area of the emergency room where defendant was being treated did not constitute a search for purposes of Article I, section 9.

■ Defendant's argument that Johnson conducted a search also fails under the Fourth Amendment. As discussed, the question for that purpose is whether the officer intruded on a reasonable expectation of privacy. *Oliver*, 466 US at 177. The reasoning set out above supports the conclusion that no such intrusion occurred.

■ Because Johnson did not conduct a search that violated either Article I, section 9, or the Fourth Amendment, his observations in the emergency room were lawful. Because those observations furnished probable cause to believe that

defendant committed the offense of DUII, the seizure of his urine sample also was lawful.[4]

Affirmed.

---

[4] Defendant does not argue that the seizure of his urine sample for chemical testing was unlawful on the ground that neither ORS 813.140 nor ORS 813.320 is applicable by its terms.