Argued and submitted November 7, 2013, reversed and remanded July 16, 2014

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

BETHANY MARIE MICHEL,
*Defendant-Respondent.*

Washington County Circuit Court
D113573T; A151202

331 P3d 1097

Tiffany Keast, Assistant Attorney General, argued the cause for appellant. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Ryan Scott argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

SERCOMBE, J.

## SERCOMBE, J.

In this criminal case, a police officer, responding to a call reporting a possible intoxicated driver, spotted defendant's vehicle pulling into a self-storage facility that rented covered and uncovered parking spots for boats and recreational vehicles. To enter the storage lot, which was surrounded by a fence, defendant entered an access code to open a locked gate. The officer—who, along with other law enforcement officials, had been given an access code by the facility's manager—followed defendant's vehicle through the gate without entering his code. The officer then stopped the vehicle at a common driveway in the lot and obtained evidence that defendant had been driving while intoxicated. Defendant, charged with driving under the influence of intoxicants (DUII), moved to suppress all evidence derived from the stop, arguing that the officer's entry on the property was an unlawful search that violated her rights under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. Specifically, she argued that, because the storage lot was not open to the public, the officer could only enter the lot pursuant to a warrant or an exception to the warrant requirement, and he had neither. The trial court agreed with defendant and granted her motion.

The state appeals, arguing that the common areas of a public storage facility protected by an access gate are not "private" for constitutional purposes where defendant could not exclude other renters, their guests, or law enforcement officers from those areas. In the state's view, it follows that, when the officer entered the storage lot, he did not violate defendant's privacy interest under the state and federal constitutions. Because we agree with the state, we reverse and remand for further proceedings.

We review the trial court's grant of defendant's motion to suppress for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). In doing so, we are bound by the trial court's express and implicit factual findings if there is constitutionally sufficient evidence in the record to support them. *Id.* We state the facts in accordance with that standard.

On July 24, 2011, a police sergeant responded to a call reporting a possible intoxicated driver. As he drove to the location where the caller had seen the vehicle, he saw a vehicle that matched the reported description—a white truck towing a boat. The vehicle pulled into the entrance of Tote & Stow, a self-storage rental facility offering covered and uncovered parking spaces for boats and recreational vehicles, as well as fully enclosed storage garages. The officer followed.

Just after entering the storage lot, the driver of the truck, defendant, stopped at an access gate. To enter the lot, which is surrounded by a six-foot chain-link fence, drivers must pass through the gate. And to open the gate, drivers must enter a security access code or use an intercom to call an employee to request entry. Tote & Stow provides renters with access codes, and it provides law enforcement officers, who are welcome on the property, with a separate access code. Specifically, the Tote & Stow property manager "highly recommend[s] for [officers] to make daily, weekly, monthly trips in as freely as they so choose" as a "visual sense of security for our customers who are there to know that it is being watched and monitored by [the] Tualatin Police Department."

Defendant entered an access code to open the gate. The officer followed directly behind defendant without entering the access code that Tote & Stow provided to law enforcement. Once through the gate, the officer activated his emergency lights to stop defendant on suspicion of driving under the influence of intoxicants. Defendant kept driving through the lot's common areas—the driveways that separated the rows of covered and uncovered parking spots. As she appeared to begin to position her truck to back the boat into one of the covered rental spots, however, the officer got out of his vehicle. Defendant stopped, left her vehicle, and walked to the officer to speak with him. During their conversation, the officer obtained evidence that defendant was intoxicated.

As noted, defendant moved to suppress that evidence under Article I, section 9, and the Fourth Amendment. Although defendant did not dispute that the officer had reasonable suspicion to stop defendant's vehicle, she argued that

an officer needed a search warrant—or an exception to the warrant requirement, *e.g.*, exigent circumstances and probable cause—"to go on to private property and pass through a gate that is secured by a security access code lock." The trial court agreed with defendant:

> "The police officer had every reason in the world to stop [defendant] prior to * * * [her] entry into that private property. I'm going to grant [defendant's] motion and * * * find that those * * * were premises not open to the general public and that you needed some type of access or permission to get on there * * * from the landowner and so I think that the arrest then was unlawful and so I'll grant your motion * * *."

The state appeals, arguing that the trial court erred for two reasons. First, the state asserts that common areas of a locked public storage facility are not "private" for constitutional purposes, and, therefore, when the officer entered the storage facility, he did not invade defendant's privacy interest—that is, he did not conduct a "search" of those premises. Second, the state argues that, even if the officer's entry into the lot's common areas was a search, the officer did not need a warrant because the property manager, who had authority to consent to the officer's entering that area, had given his consent.

Defendant responds that neither argument is preserved for our review. Defendant argues that the state's first argument on appeal "blurs two distinct issues: whether the area was open to the public and, even if it was not, whether the defendant had a privacy interest." In defendant's view, the prosecutor argued to the trial court only that the storage lot was "in fact open to the public," and that that was a standalone argument, separate from any assertion that the officer did not invade defendant's privacy interest by coming onto the property. Thus, the only issue that was preserved, defendant argues, is whether the storage lot was open to the public. On that question, defendant asserts that "[b]y any reasonable standard, the facility was not open to the public" because entry on the privately owned lot was controlled by a fence and an access gate. As to the state's argument regarding consent, defendant acknowledges that the prosecutor

made "cursory mention" of the fact the property owner had consented to law enforcement entering the storage lot, but that argument "was in the context of defendant's privacy interest, and nothing more."

To better understand the parties' arguments, and to resolve the threshold questions regarding preservation, we start with the constitutional principles that bear on defendant's motion to suppress.[1] Article I, section 9, protects against unreasonable searches and seizures.[2] "A 'search' occurs when a person's privacy interests are invaded." *State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986). Those privacy interests protected by Article I, section 9, "are defined by an objective test of whether the government's conduct 'would significantly impair an individual's interest in freedom from scrutiny, *i.e.*, his privacy.'" *State v. Wacker*, 317 Or 419, 425, 856 P2d 1029 (1993) (quoting *State v. Dixson/Digby*, 307 Or 195, 211, 766 P2d 1015 (1988)).

Although our focus under Article I, section 9, is on protected privacy interests, those interests "generally are not self-announcing and, with a few possible exceptions, can be recognized only by their association with a private *place*, *i.e.*, by the fact that an object is kept or conduct occurs in a place that legitimately can be deemed private." *State v. Smith*, 327 Or 366, 372, 963 P2d 642 (1998) (emphasis in original). That is not to say that privacy interests are "necessarily determined by whether the police conduct takes place on private or public property." *State v. Erb*, 135 Or App 421, 424, 899 P2d 716 (1995). Rather, the classification of a space as "that legitimately can be deemed private" is a reflection of constitutional principles that have developed through our case law. For example, as the Supreme Court explained in

---

[1] Because we examine state constitutional arguments before addressing the federal constitutional arguments, *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983), we start with the background principles under Article I, section 9, to address the parties' preservation arguments. In the trial court, the parties raised the same arguments under Article I, section 9, and the Fourth Amendment without addressing those constitutional provisions separately, and therefore the preservation concerns are the same for both the federal and state constitutional claims.

[2] Article I, section 9, provides, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

*State v. Campbell*, 306 Or 157, 170-71, 759 P2d 1040 (1988), "both laws and social conventions have long recognized the right to exclude others from certain places deemed to be private." Thus, in *State v. Cromb*, 220 Or App 315, 325-26, 185 P3d 1120, *rev den*, 345 Or 381 (2008), we reasoned that a curtained-off treatment area in a hospital emergency room was not a "private" space for constitutional purposes because the defendant had no right to restrict access to that space by patients, their families, and emergency workers. Accordingly, we concluded that, when an officer observed the defendant in that space, he did not invade the defendant's privacy interests.

Even if an officer's warrantless entry onto property invades a defendant's privacy interests, however, that invasion may not trigger suppression of evidence if "one of the few specifically established and well-delineated exceptions to the warrant requirement" applies. *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983) (internal quotation marks omitted). Consent is a recognized exception to the warrant requirement. *See, e.g., State v. Ford*, 220 Or App 247, 251, 185 P3d 550 (2008). Further, as relevant here, "common authority to validly consent to a search rests on mutual use of the property by persons generally having joint access or control for most purposes." *State v. Kurokawa-Lasciak*, 249 Or App 435, 440, 278 P3d 38, *rev den*, 352 Or 378 (2012) (internal quotation marks omitted).

With those principles in mind, we consider whether the state preserved the two arguments it makes on appeal: (1) that the officer did not invade defendant's privacy interests because the storage lot was not a "private" place from which she had a right to exclude others; and (2) even if the officer did invade defendant's privacy interests when he entered the lot, that action was justified under the consent exception to the warrant requirement. To preserve an argument at trial, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000).

In response to defendant's motion to suppress all evidence derived from the officer's stop inside Tote & Stow, the state countered that the storage facility was open to the public, focusing on whether defendant had a privacy interest in that area:

"In this case, the Tote & Stow is similarly situated where anybody in the general public, as [the property manager] testified to, is welcome to rent a space on the premises and drive their vehicle on to the premises so long as they pay that rental fee, but more importantly in this case, permission to access this property was specifically given to law enforcement authorities.

"So, that * * * moves me on to my next point regarding standing, whether the defendant even has a basis to claim any type of privacy interest. First, I would ask the court to consider the nature of the facility itself. There are multiple spaces available for rent that are going to be observed and seen by any person that is renting a * * * space on that storage facility.

"* * * * *

"* * * [F]or these parking stalls, * * * whether it's covered or uncovered, nobody has any expectation that that vehicle, that trailer, that RV is going to be seen inside the vehicle and containers within the vehicle certainly could create that expectation of privacy, but seeing the vehicle itself, there is no expectation of privacy for that parking stall."

The state went on to argue that renters and others using the lots "don't have the right to exclude any other person that's renting a spot on the property," drawing an analogy to this court's decision in *Cromb*:

"In [*Cromb*], * * * the Court of Appeals * * * found where police went in to a hospital emergency room where the room was curtained off and the defendant was inside his hospital bed in this enclosed area[,] * * * defendant had no privacy interest in that area.

"They had no right or authority to exclude law enforcement from entering the hospital or other staff members of the hospital from entering the hospital or that specific emergency room area or that screened area. Just as in this case this defendant had no authority or right to exclude police from the premises.

"Just like in [*Cromb*], a hospital can give permission to law enforcement to enter the emergency room to protect [its] own interests and that's what happened in this case."

The state concluded:

"For those reasons, I'd ask the court to deny the motion to suppress. The officer had a reasonable basis to form his reasonable suspicion of DUII. *** He *** relied on those statements of the informant to initiate his traffic stop and entered the Tote & Stow.

"It was with the permission of the property owner, the Tote & Stow [property] manager ***. They gave permission to law enforcement to enter the property. And, based on his reasonable suspicion, he initiated the traffic stop of this defendant and, ultimately, arrested her. There was no violation to the defendant and certainly no violation of any privacy interest she had."

The trial court explained that he understood the state's argument to be that, "because the owner allowed the police to come on there and because as some people do have access to that, there's no expectation of privacy and that [defendant] could not exclude police officers." In response, defendant argued that "there is a gate that is supposed to be locked at all times and *** that certainly gives an expectation of a privacy interest in that property."

Our review of the record shows that the state preserved the threshold argument that defendant had no privacy interest in the common area of a storage facility that was not "private" for constitutional purposes. Contrary to defendant's claim, the state was not simply asking the trial court to deny defendant's motion because Tote & Stow was "open to the public" in the same way that a highway or city park is. There was no dispute that Tote & Stow was privately owned property that was protected by a fence and an access gate. The state asserted that, even so, defendant had no basis to claim a privacy interest in the common area of the storage lot, given that other renters, their guests, and the police could access the lot, and defendant could not exclude them from the lot's common areas. It is true that the state argued in the trial court that those considerations compelled a conclusion that the storage lot—or at least its common area—was

"public" rather than "private," but the state used those labels in a constitutional sense, just as *Cromb* and other cases had, in support of its claim that the officer did not invade defendant's privacy interests. Accordingly, the state has preserved that argument for our review.

The same cannot be said for the state's alternative argument as to consent. Even though the prosecutor pointed out that the property manager had given consent to law enforcement to enter the storage lot, the prosecutor cited that fact in support of a threshold claim that defendant had no right to exclude others and thus no privacy interest to invade. No mention was made as to the consent *exception* to the warrant requirement, an analytically distinct issue from the more fundamental question of whether any privacy invasion occurred at all. Moreover, as the state acknowledged at oral argument, the trial court did not rule on the consent exception to the warrant requirement. Such a ruling would be expected, had the state made an argument under the consent exception, because that would be a basis to deny defendant's motion even if the officer invaded defendant's privacy interest by entering the Tote & Stow lot. Because the state did not preserve a consent argument in the trial court, we will not consider that argument further.

On the merits, then, the sole question is whether the common roadway of the storage lot is not "private" for constitutional purposes, so that a renter does not have a privacy interest in that area. On appeal, the state argues that this case is controlled by *Cromb*, and so we begin there.

In *Cromb*, a police officer walked into a curtained-off area of a hospital emergency room where the defendant was being treated after a car accident. 220 Or App at 318. The officer observed the defendant's condition and obtained a sample of his urine for chemical testing, and the defendant was later charged with DUII. The defendant filed a motion to suppress the test results, which was denied. On appeal, the defendant contended that the trial court erred in concluding that he had no protected privacy interest in the area of the emergency room where he was being treated and the officer's entry into that area therefore did not constitute a search.

We began by describing the question as whether the curtained-off area where the defendant was receiving treatment "was essentially a private place where he was entitled to freedom from scrutiny." *Id.* at 320. Applying "the rights-based analysis required under Article I, section 9," we noted that it was significant that "hospital personnel—not [the] defendant himself—had control over who was present in that area." *Id.* at 325. Because the defendant had no right to control "whether other patients, their families, or hospital personnel and other emergency workers, including police officers, may be present in the area," we concluded that the curtained-off portion of a hospital emergency room where the defendant was being treated was "not a private place." *Id.* at 326.

That conclusion, we reasoned, was consistent with the "societal norms [that] are enmeshed with the determination whether a privacy interest exists under Article I, section 9." *Id.* at 322. We looked to Fourth Amendment cases considering whether a defendant had a reasonable expectation of privacy in a hospital emergency room and the curtained-off areas within it. *Id.* at 323-25 (discussing *State v. Rheaume*, 179 Vt 39, 889 A2d 711 (2005); *Buchanan v. State*, 432 So 2d 147 (Fla Dist Ct App 1983); *People v. Torres*, 144 Ill App 3d 187, 494 NE2d 752 (1986)). Courts in those cases uniformly had concluded that no such privacy right existed, reasoning that, although the public at large could not access the emergency areas in a hospital, medical personnel, staff, patients, emergency workers, and police officers moved through those areas as a matter of course. While mindful of the different constitutional test applied in those cases, we determined that their reasoning "suggests that prevailing social norms do not treat a hospital emergency room, even curtained areas within it, as space in which privacy rights inhere." *Id.* at 325. Ultimately, we concluded that the officer's presence and observations in the place where he encountered the defendant did not constitute a search for purposes of Article I, section 9. *Id.* at 327.

The same is true here. Tote & Stow offered rental spaces and storage units to the public, much like the emergency room in *Cromb* offered its services to the public. And

although the general public was not free to wander onto the storage lot at will, Tote & Stow controlled who accessed the storage lot's common areas much like the hospital controlled the personnel and visitors who accessed the treatment areas in the emergency room. The lot's common areas were open to anyone who rented a spot, their guests, and anyone whom employees allowed to enter using the intercom system, and defendant had no right to exclude any of those people from those areas. In accord with *Cromb*, it follows that the driveway of the storage lot where defendant was stopped was not a "private" space where she was entitled to freedom from scrutiny.

Defendant's status as a renter of a single space in the storage lot does not compel a different conclusion. To be sure, we have recognized that tenants in a multi-unit *residence* may have a privacy interest in certain common areas with respect to the general public, including police officers. *See, e.g., State v. Larson*, 159 Or App 34, 40-41, 977 P2d 1175, *rev den*, 329 Or 318 (1999) (explaining that "the fact that a common area of an apartment building is involved is not, in itself, determinative of whether a privacy interest exists," and noting that "[o]f particular significance is the physical layout of the living units and the residents' use of the area in question"). But here the property in question was part of a self-storage facility for boats and vehicles, not a residence. Consistently with the invitation by Tote & Stow's owner, law enforcement personnel used the common area of the facility to provide security for the benefit of all renters. And the driveways were not used by the renters in a territorial and exclusive way or otherwise held out as private by the renters. *Cf.* 159 Or App at 41-42 (concluding that the defendant, as a resident in an apartment building, had a privacy interest in the shared, partially fenced backyard of the apartment building, where a "KEEP OUT!" sign posted by another resident manifested an intent, on the part of all residents, to exclude the public, including police officers, from that area). Given how other renters and law enforcement used the common areas of the rental lot, defendant's status as a renter of a space in the lot did not give rise to a privacy interest in those areas. As a consequence, the officer's entry onto the property did not invade defendant's protected privacy interest under Article I, section 9.

The separate test we apply under the Fourth Amendment yields the same result.[3] The Fourth Amendment protects a person's expectation of privacy "that society is prepared to recognize as reasonable." *Wacker*, 317 Or at 427-28 (internal quotation marks omitted). For the reasons we have discussed above, a person renting a space in a storage facility does not have a reasonable expectation of privacy in the common area of that facility, and the officer's entry into that common area is not a search under the Fourth Amendment. *See also, e.g., State v. Lakotiy*, 151 Wash App 699, 713, 214 P3d 181 (2009), *rev den*, 168 Wash 2d 1026 (2010) (so concluding and collecting federal appellate court decisions under the Fourth Amendment).

In sum, we conclude that the officer's entry into the common driveway of the storage facility did not violate defendant's privacy interests under Article I, section 9, or the Fourth Amendment. Because the officer lawfully entered the common driveway of the Tote & Stow storage lot—and because defendant does not dispute that the officer's stop of defendant was justified by reasonable suspicion that she had committed a crime—the trial court erred in granting defendant's motion to suppress.

Reversed and remanded.

---

[3] The Fourth Amendment provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"