Argued and submitted January 26, 2016, reversed and remanded July 6, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEVEN CHRISTOPHER DAVIS,
*Defendant-Appellant.*

Washington County Circuit Court
C132808CR; A156825

400 P3d 994

John Evans, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jonathan N. Schildt, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

**ORTEGA, P. J.**

Defendant challenges his conviction for unlawful possession of methamphetamine, ORS 475.894, assigning error to the trial court's denial of his motion to suppress. He argues that the officer unlawfully extended an otherwise lawful stop by investigating whether he possessed drugs without reasonable suspicion. Although he acknowledges that the officer had reasonable suspicion to initially stop him to investigate a reported theft, he contends that the officer's observation that defendant appeared to be under the influence of intoxicants did not provide the officer with reasonable suspicion to extend the stop while he investigated whether defendant possessed controlled substances. The state responds that, under the totality of the circumstances, the officer had reasonable suspicion that defendant possessed drugs when the officer began investigating drug possession. Ultimately, we conclude that the officer's belief that defendant possessed drugs was not objectively reasonable, and we reverse and remand.

We review a trial court's denial of a motion to suppress for legal error, and are bound by the court's express factual findings if evidence in the record supports them. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). If the trial court has not made an express factual finding, we presume that the trial court found the facts in a manner consistent with its ultimate conclusion. *Id.* Consistently with that standard, we state the facts as they were recounted at the suppression hearing by the investigating officer.

On a rainy morning just before 4:00 a.m., the Tigard Police Department received a report that someone was trying to steal gas from a closed gas station in Tigard. Officer Powers was dispatched to investigate. Based on his experience, he knew that the gas station was a "known thoroughfare for drug users, drug deals" and that the gas station had "a lot of problems with people *** [b]reaking in to the—the bathroom there *** [a]nd either *** sleeping in there or using drugs." The suspects were described as a male and a female in a "dark-colored pickup, possibly a Toyota, th[at] was slightly [raised] and had overhead lights." Powers arrived at the station within two minutes of the report and

observed a "blue pickup, a Toyota with * * * overhead spot-lights, occupied by a male and a female * * * parked under the covered kind of carport area of the gas pumps." The pickup started to drive away when Powers pulled in to the gas station. Powers activated his emergency overhead lights and stopped the vehicle.

Powers approached defendant, who was driving the pickup, and explained that he was stopping defendant because he had received a report that someone was stealing gas. Powers asked to see defendant's driver's license. Defendant, who along with his passenger, appeared "pretty nervous," provided the license and "kept telling" Powers that he "didn't do anything wrong. Do you want to search my car? Go for it." Powers found defendant's statement odd because he had not asked defendant "if there was anything in his car that I should be alarmed of or if there was anything illegal in his car." Defendant's voice was "pretty excited" and he "kept fidgeting in the car."

Powers asked defendant "where he was coming from" and "where he was going." Defendant initially explained that he was traveling from his home in northeast Portland to the "beach." Powers found it "curious" that someone would be heading to the beach at 4:00 a.m. on a rainy morning. Defendant clarified that he was first headed to a casino in McMinnville, and then "we'll probably go to the beach." Defendant was vague about which "beach" he was ultimately headed to, and Powers found it "curious" that someone driving from northeast Portland did not "have an idea of at least what beach [they were] going to."

A backup officer arrived and Powers asked him to find the person who reported the suspected theft to see "what they actually saw." Defendant proceeded to start "rummaging" around the cab of his pickup, which was cluttered and raised high enough so that Powers could not see defendant's hands. Powers was concerned for his safety and asked defendant to step out of the vehicle. Once outside the vehicle, defendant kept putting his hands in his pockets and Powers repeatedly asked him to remove them from his pockets. Defendant continued to act very nervous—pacing back and forth, throwing his hands in the air, repeatedly saying "I

didn't do anything wrong. I was cleaning off my window." Powers also noted that defendant failed to make eye contact "for very long."

Based on his experience as a police officer, Powers suspected that defendant was under the influence of intoxicants. In particular, Powers noted that defendant was making "rapid and involuntary movements just with his hands," he "couldn't sit still," "he was pacing back and forth," and he was making some "random statements" including a confusing story about where he was coming from and where he was heading. Powers asked defendant if a drug detection canine would alert "on his pickup at all." Defendant replied, "I have some weed in my pocket and that's it."

Powers asked defendant if he had an Oregon medical marijuana card, and when he replied that he did not, Powers asked defendant if marijuana was the only drug he had on his person, and defendant responded, "Yeah, you want to search me?" Powers searched defendant and found a small bag of methamphetamine and a small bag of marijuana in defendant's pocket.

After defendant was charged with unlawful possession of methamphetamine, he moved to suppress the evidence discovered during the search. At the close of testimony at the suppression hearing, defendant argued, among other things, that Powers' observations that defendant might have been under the influence of intoxicants is "not reasonable suspicion that [he] currently possess drugs." The trial court denied the motion.

On appeal, defendant concedes that he was lawfully stopped by Powers on suspicion of theft, attempted theft, and criminal mischief, but argues that Powers unlawfully extended the stop into a drug possession investigation without reasonable suspicion. Thus, according to defendant, the trial court should have suppressed the evidence found in defendant's pocket and any statements made by defendant during the unlawful extension of the stop. For its part, the state does not dispute that, when Powers asked defendant if a drug detection canine would alert "on his pickup," Powers had shifted his investigation from theft to drug possession.

The state argues that the shift in the investigation was supported by reasonable suspicion that defendant possessed drugs.

Article I, section 9, of the Oregon Constitution, requires a temporary restraint of a person's liberty for an investigatory purpose—*i.e.*, a "stop"—to be justified by "necessities of a safety emergency or by reasonable suspicion that the [stopped] person has been involved in criminal activity[.]" *State v. Ashbaugh*, 349 Or 297, 308-09, 244 P3d 360 (2010). When a stop is initially lawful, "it may endure only for the time it takes an officer to complete an investigation that is reasonably related to the basis for the stop." *State v. Sherman*, 274 Or App 764, 773, 362 P3d 720 (2015). When a stop extends past that point, "it must be justified by at least reasonable suspicion of some other criminal activity."[1] *Id.* Here, as the parties have framed the issue, the dispositive question is whether Powers had reasonable suspicion of drug possession when he asked defendant whether a drug detection canine would alert "on his pickup."[2]

Reasonable suspicion exists if a police officer "subjectively suspects that an individual has committed, or is about to commit, a crime, and that belief is 'objectively reasonable under the totality of the circumstances.'" *State v. Huffman*, 274 Or App 308, 312, 360 P3d 707 (2015), *rev den*, 358 Or 550 (2016) (quoting *Ehly*, 317 Or at 79). The objective component of the test requires the officer to identify "specific and articulable facts from which he or she formed an objectively reasonable suspicion that a person has committed or is about to commit a crime." *State v. Kentopp*, 251 Or App 527, 532, 284 P3d 564 (2012). The standard "does not require

---

[1] The state implicitly acknowledges that the record lacks evidence that Powers's investigation into whether defendant possessed drugs occurred during an "unavoidable lull" in Powers's theft investigation. *See State v. Kimmons*, 271 Or App 592, 601-02, 352 P3d 68 (2015) (acknowledging that a request for consent to search for items unrelated to reason for initial stop during an "unavoidable lull" does not unlawfully extend the stop).

[2] The state argues that we should decline to consider defendant's argument that reasonable suspicion did not support Powers's investigation into drug possession because "to the extent that [defendant] raised it in the trial court, he did so in a way that frustrates the purposes of the preservation rule." Without further written discussion, we reject the state's suggestion that defendant failed to preserve the argument he makes on appeal.

that the articulable facts observed by the officer *conclusively* indicate illegal activity but, rather, only that those facts support the *reasonable inference* that a person has committed a crime." *State v. Hammonds/Deshler*, 155 Or App 622, 627, 964 P2d 1094 (1998) (emphases in original). "An officer cannot articulate sufficiently specific facts to satisfy Article I, section 9, if the officer cannot articulate, with at least *some* specificity, what type of crime that the person stopped may have committed." *State v. Maciel-Figueroa*, 361 Or 163, 179, 389 P3d 1121 (2017) (emphasis in original).

Although "[o]fficer intuition and experience alone are not sufficient to meet that objective test[,]" *State v. Holdorf*, 355 Or 812, 823, 333 P3d 982 (2014), the reasonable suspicion standard includes "a proper regard for the experience that police officers bring with them when they encounter criminal suspects." *Id.* at 827-28. That is, "a police officer's training and experience may, depending on the factual circumstances, * * * be given appropriate weight." *Id.* at 829. However, the Supreme Court has cautioned that "training and experience must be established * * * through admissible evidence of specific articulable facts that permit an officer to make a reasonable inference based on the officer's pertinent training and experience." *Id.*

Thus, our task on appeal is to determine the facts that were known to Powers at the time that he shifted his investigation to drug possession, and, whether, as a matter of law, those facts gave Powers objectively reasonable suspicion that defendant possessed controlled substances. *See Sherman*, 274 Or App at 773.

According to Powers's testimony, when he asked defendant about the drug detection canine, he knew the following facts: (1) the gas station was a "known thoroughfare for drug users, drug deals" and had problems with "people damaging the property" and using drugs in the bathroom; (2) defendant was "very nervous"; (3) Powers found defendant's explanation about his travel route and the timing of his trip suspicious; (4) based on Powers's training and experience, defendant appeared to be under the influence of methamphetamine; and (5) defendant was "rummaging"

around the cab of his truck, and when he got out, he repeatedly reached his hands into his pockets despite being told to stop.

Defendant argues that those facts are not enough to show an objectively reasonable suspicion of drug possession. In defendant's view, the facts articulated by Powers showed, at most, an objectively reasonable belief that defendant was under the influence of intoxicants, which defendant asserts is insufficient on its own to conclude that a person presently possesses drugs.

Defendant is correct that we have required more than mere intoxication or evidence of past drug use to demonstrate reasonable suspicion of current drug possession. In *State v. Miller*, 267 Or App 382, 393-94, 340 P3d 740 (2014), we explained that an officer's reasonable suspicion that a person is under the influence of intoxicants is insufficient on its own to provide an objectively reasonable basis for concluding that the person presently possesses drugs. We observed that "something more" is required. *Id.*; *see also State v. Morton*, 151 Or App 734, 739, 951 P2d 179 (1997), *rev den*, 327 Or 521 (1998) (officer lacked reasonable suspicion that the defendant possessed marijuana, despite the officer's observations that the defendant's behavior and appearance were consistent with being under the influence of the drug). Similarly, in *State v. Farrar*, 252 Or App 256, 261, 287 P3d 1124 (2012), we concluded that the totality of the circumstances did not support reasonable suspicion of present methamphetamine possession when the only facts articulated by the officer were that the defendant's behavior was indicative of methamphetamine use.

Nevertheless, when the officer reasonably believes that the defendant is under the influence of intoxicants, reasonable suspicion of drug possession can be demonstrated when "something more" is present. For example, in *State v. McHaffie*, 271 Or App 379, 385-88, 350 P3d 600 (2015), there was reasonable suspicion of drug possession when the facts known to the officer showed that the driver of a vehicle in which the defendant was a passenger was a methamphetamine user, the defendant had been involved in methamphetamine use in the past, the defendant appeared

extremely nervous and under the influence of intoxicants, and the defendant engaged in "indexing" behavior, which was associated with possession of contraband. Similarly, in *Holdorf*, the Supreme Court concluded that there was reasonable suspicion of drug possession when the officer's training and experience led him to believe the defendant was "tweaking" at the time of the stop, the defendant was in a vehicle with "a known felon with an outstanding warrant who was under investigation as a suspect in a local meth-amphetamine distribution ring," and the vehicle was associated with a prior drug deal. 355 Or at 829-30.

Therefore, the question is whether, in the totality of the circumstances, the additional facts articulated by Powers provide the "something more" in this case to show objectively reasonable suspicion of drug possession. As we explain below, we conclude that the additional facts articulated by Powers add little or nothing to the reasonable suspicion calculus, and without an adequate explanation by Powers as to why those additional facts collectively were suggestive of drug possession, those facts do not provide the "something more" that is required to demonstrate objectively reasonable suspicion of drug possession.

We begin with Powers's observation that defendant was "very nervous" and Powers's belief that defendant's explanation about his travel route and the timing of his trip was suspicious. First, "nervousness during a traffic stop contributes little, if any, weight toward reasonable suspicion that the driver is engaged in criminal activity." *State v. Espinoza-Barragan*, 253 Or App 743, 750, 293 P3d 1072 (2012). As we noted in *State v. Berry*, 232 Or App 612, 618, 222 P3d 758 (2009), "there is nothing inherently suspicious about * * * being nervous when pulled over by a police officer, particularly at [a very early morning] hour." Similarly, defendant's "suspicious" description of his travel route, and the timing of his travel, add little, if anything, to the reasonable suspicion calculus. We have noted that a "transparently false explanation" for taking a particular action or route, even when considered "in combination with the defendant's nervousness, furtive movements, and prior presence at a known location for drug trafficking did not give rise to a

reasonable suspicion that the defendant possessed drugs." *Espinoza-Barragan*, 253 Or App at 751 (explaining holding in *Berry*).

We also conclude that Powers's observation that defendant was "rummaging" around the cab of his pickup adds nothing to the reasonable suspicion calculus in this case because Powers did not associate that behavior with drug possession. Certain behaviors, when considered in light of the officer's training and experience, can contribute to the reasonableness of an officer's suspicion that a defendant possesses drugs. For example, in *McHaffie*, the officer testified that the defendant was engaged in "indexing" behavior, which, in that officer's training and experience, was specifically associated with the possession of contraband. 271 Or App at 385. We concluded that that observation, in combination with the defendant's association with a known drug user, information that the defendant had used methamphetamine in the past, and signs that the defendant was intoxicated at the time of the stop, were enough to constitute reasonable suspicion of drug possession. *Id.* However, the officer in that case specifically testified that, in his training and experience, there is a connection between indexing behavior and the possession of contraband. Here, Powers did not testify that there was a connection between defendant's "rummaging" behavior and possible drug or contraband possession. Instead, Powers testified that because the pickup truck was "raised up a bit" and because the cab was "cluttered," defendant's rummaging behavior caused Powers "officer safety" concerns. Thus, he never suggested that defendant's behavior contributed to his suspicion that defendant possessed drugs.

Finally, the location of the stop—at a "known thoroughfare for drug users, drug deals"—does not add much to the calculus on its own. "We have repeatedly said that a person's presence in a location associated with drug activity is insufficient to support an objectively reasonable belief that that person is himself or herself engaged in drug activity." *State v. Bertsch*, 251 Or App 128, 134, 284 P3d 502 (2012). Although a person's location in an area associated with a high level of criminal activity is "not irrelevant," "the police must also identify particularized facts about the

defendant that support the inference that the defendant's presence at the location is indicative of criminal activity." *State v. Washington*, 284 Or App 454, 463-64, 392 P3d 348 (2017). Here, Powers did not articulate any specific connection between defendant's presence at the gas station and his suspicion that defendant *possessed* drugs. That is, his comment that the gas station was "a known thoroughfare for drug users, drug deals" was vague, and he did not draw any connection between his observations of defendant's behavior and the "drug users," and "drug deals" associated with that particular location. In fact, the only connection articulated by Powers regarding defendant and the gas station was the report Powers had received that defendant was stealing gas. Accordingly, Powers's articulation of that fact adds little value to the reasonable suspicion calculus in this case.

Therefore, other than Powers's observation that, based on his training and experience, defendant was exhibiting signs of controlled substance intoxication, none of the other facts articulated by Powers add much of anything to the reasonable suspicion calculus when considered in isolation. And, even when we consider those facts—as we must—in the totality of the circumstances, we conclude that they do not provide the "something more" that is necessary to demonstrate objectively reasonable suspicion that defendant possessed drugs.

To recap, defendant's nervousness and his "suspicious" explanation of his travel plans add nothing to objectively reasonable suspicion of drug possession. Similarly, defendant's "rummaging" behavior adds nothing to the calculus because, although certain "indexing" behaviors can contribute to suspicion of possession of drugs or contraband, Powers's explanation in this case was that defendant's rummaging behavior was concerning for officer safety reasons, not indicative of contraband possession. And finally, Powers's vague explanation that the location of the stop was a "known thoroughfare for drug users, drug dealers" adds very little to the calculus—at least, in the absence of other specific and articulable facts about the encounter that show defendant's presence at that location was suggestive of drug possession.

Accordingly, even considering all the facts articulated by Powers in the totality of the circumstances, the "something more" that is necessary to show objectively reasonable suspicion of drug possession in cases where the defendant is showing signs of current intoxication is missing. Consequently, we conclude that Powers's suspicion that defendant currently possessed drugs was not objectively reasonable.

The state asserts that, even if Powers extended the stop without reasonable suspicion of drug possession, we should affirm the judgment because defendant voluntarily consented to a search of his person. The state acknowledges that it did not address in the trial court whether defendant's consent was attenuated from any unlawful extension of the stop, but nonetheless asserts that, because the state established that defendant voluntarily consented to a search in noncoercive circumstances, that was enough, by itself, to establish attenuation. As we noted in *State v. Keller*, 280 Or App 249, 258, 258 n 3, 380 P3d 1144 (2016), "voluntariness of consent" and "attenuation" are distinct inquiries, and where the state has not made the attenuation argument below and the record may have developed differently, we will not consider the argument as an alternative basis for affirmance. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (affirming on alternative basis only available if the record before us is materially the same as the one that would have developed had the state raised the alternative basis for affirmance below).

In the alternative, the state asks us to remand the case for the parties to present evidence and argument on attenuation. We decline to do so. *See State v. Jones (A154424)*, 275 Or App 771, 776, 365 P3d 679 (2015) (noting that "the burden has long been on the state to establish attenuation" and declining to remand for further findings).

Because the evidence that should have been suppressed was essential to defendant's conviction, the error was not harmless.

Reversed and remanded.