Submitted November 24, 2020, reversed and remanded July 14, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RONALD CHARLES CANEPA, JR.,
*Defendant-Appellant.*

Josephine County Circuit Court
19CR07210; A171064

497 P3d 319

Defendant was on transitional leave from the Department of Corrections (DOC) when he was stopped for a traffic violation. During that stop, the investigating officer called defendant's "supervising officer" to ask if there was anything that he should be concerned about. The supervising officer knew that defendant had a history of drug possession, had recently admitted to using methamphetamine, and had recently associated with a person known to be involved in criminal activity. As a result of the officers' conversation, the investigating officer asked for defendant's consent to search his car. Defendant consented to the search and the investigating officer found methamphetamine. Defendant moved to suppress that evidence, arguing that the investigating officer lacked "reasonable grounds" to request his consent to search. The trial court denied defendant's motion and he subsequently entered a guilty plea for possession of methamphetamine, ORS 475.894(2)(b). On appeal, defendant assigns error to the denial of his motion to suppress. *Held*: The trial court erred in denying defendant's motion to suppress. The facts articulated by defendant's supervising officer did not create "reasonable grounds" to suspect that defendant possessed drugs on his person or in his car during the traffic stop.

Reversed and remanded.

Robert S. Bain, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

MOONEY, J.

Reversed and remanded.

**MOONEY, J.**

Defendant was on transitional leave from the Department of Corrections (DOC) when he was pulled over for a traffic violation. During that stop, the investigating officer called defendant's "supervising officer" to inform him that defendant had been stopped and to ask if there was anything that he should be concerned about. The supervising officer mentioned that defendant might have guns, that he had a history of drug possession, that he had recently admitted to using methamphetamine, and that he had recently associated with a person known to be involved in criminal activity. He suggested that the officer request defendant's consent to search the car. The officer did so, defendant consented, and the officer found methamphetamine. The trial court denied defendant's motion to suppress that evidence, after which defendant entered a conditional guilty plea and appealed his conviction. On appeal, he argues that the court erred in denying his motion to suppress because his supervising officer did not have "reasonable grounds" to request his consent to search the car. We agree with defendant and therefore reverse the judgment.

We review denials of motions to suppress for legal error. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). Here, we must specifically review the question of whether defendant's supervising officer had a sufficient basis for asking defendant to consent to a search. *See State v. Gulley*, 324 Or 57, 63-67, 921 P2d 396 (1996) (applying standard in probation context). We are bound by the trial court's findings of historical fact if there is evidence in the record to support them. *Ehly*, 317 Or at 75.

The relevant facts are not in dispute. Defendant was released from the DOC in November 2018 on "short-term transitory leave," which is a form of post-prison supervision. Defendant retained the status of "inmate." He was not on probation. Because defendant was not on probation, ORS 137.540(1)(i), which governs requests to search a person who is on probation, does not apply here. However, the parties agree that defendant's conditional release included a requirement that he submit to a search when his supervising officer had "reasonable grounds" to believe that a

violation of his release may have occurred. And, although the state made no record of what defendant's conditions of release were, the parties agree that defendant would have been in violation if he was found to be in possession of methamphetamine.

On January 28, 2019, he met with his supervising officer and acknowledged that he had used methamphetamine two days before. On January 29, 2019, Officer Galinski initiated a traffic stop of defendant to investigate a potential traffic violation related to the reflectivity of defendant's license plate. *See* ORS 803.535(1)(c); ORS 803.550(2). During the stop, Galinski discovered that defendant was driving without a license and that he was on supervised release from the DOC.

Galinski called defendant's supervising officer, Scaglione, during the traffic stop to advise him of the stop. Galinski told Scaglione that defendant was cooperative, but he asked whether there was anything that he should be concerned about. Scaglione responded that it was possible that defendant was in possession of firearms, methamphetamine, or both. With regard to methamphetamine, he told Galinski that defendant had admitted to using methamphetamine within the day or two immediately prior to the stop. He also discussed with Galinski that defendant had been associating with Bafunda, whom Scaglione knew to be on short-term transitory leave from the DOC and whom he suspected was a "potential[] criminal associate."

Scaglione advised Galinski to request defendant's consent to search the car, but he did not specifically communicate why he believed that there were "reasonable grounds" to do so. Importantly, Scaglione did not know—and thus did not say—whether he thought defendant would use any firearm in his possession for criminal purposes beyond the unlawful possession of a firearm by a convicted felon, ORS 166.250(1)(c)(C), whether defendant was likely to have illegal drugs on his person, or whether Bafunda was actually involved with dealing, possessing, or using drugs. Scaglione knew that defendant had never been convicted of a person crime, and he knew that defendant's last drug-related

conviction was in 2013, but he did not communicate that information to Galinski.

Defendant agreed to allow Galinski to search the car, which resulted in Galinski finding methamphetamine in a bag. He was subsequently charged with possession of methamphetamine. Defendant moved to suppress that evidence, arguing that Scaglione, as his supervising officer, did not have "reasonable grounds" to seek consent to search his car—for drugs or firearms. Scaglione was the sole witness at the suppression hearing, and he testified about the concerns he conveyed to Galinski during their phone call, as described above.

The state argued that defendant's prior drug convictions, recent admitted drug use, and association with Bafunda provided reasonable grounds to request defendant's consent to search his car. The state also argued that there were reasonable grounds to request defendant's consent to search based on Scaglione's suspicion that defendant possessed firearms. The trial court concluded that no reasonable grounds existed to request a search for firearms.

Defendant argued that there was no evidence that he possessed drugs on his person, in the car, or in the containers searched. Defendant correctly noted that the state bore the burden to show that there were reasonable grounds to search for drugs. He argued that Scaglione's testimony about recent drug use and defendant's association with Bafunda were not sufficient to establish reasonable grounds to believe that defendant was in possession of drugs and that there were, therefore, reasonable grounds to search for drugs. In denying the motion to suppress, the trial court explained that defendant's admitted drug use, as well as his association with a person known to be engaged in criminal activities, gave rise to reasonable grounds to request that defendant submit to a search for methamphetamine. Defendant entered a conditional guilty plea for possession of methamphetamine, ORS 475.894(2)(b), after which he appealed the judgment of conviction.

On appeal, defendant assigns error to the trial court's order denying the motion to suppress. As mentioned,

the parties correctly agree that we apply the same "reasonable grounds" standard used in probation contexts to this early-release, post-prison type context. They also agree, for the purposes of this appeal, that Scaglione did not have reasonable grounds to request defendant's consent to search for firearms. The only question, therefore, is whether Scaglione, by proxy, had reasonable grounds to request defendant's consent to search his car for methamphetamine. We conclude that he did not.

Article I, section 9, of the Oregon Constitution establishes the people's right "to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." Article I, section 9 generally requires investigating officers to obtain a warrant to search a person or the person's belongings. *State v. Tennant*, 310 Or App 70, 75, 483 P3d 1226 (2021). One exception to the warrant requirement is consent. *State v. Dunlap*, 215 Or App 46, 53, 168 P3d 295 (2007). If a probationer—or, in this case, a person on short-term transitional leave from the DOC—consents to a search pursuant to an agreement allowing investigations officers to conduct such a search, the state must still prove that the request for consent was permissible. *Id.* at 54. It must do so by, among other things, demonstrating that the investigating officer had "reasonable grounds" to request consent to search. *Id.* at 48.

To have "reasonable grounds" to seek a defendant's consent to search, the officer must have more suspicion than is required for "reasonable suspicion," but less than is required for "probable cause." *Gulley*, 324 Or at 65. Like the reasonable suspicion standard, the officer seeking consent must possess specific and articulable facts that would lead him or her to believe that the probationer—or inmate on transitory leave—has committed a probation or release violation, "and that a search of the probationer's person, residence, vehicle, or property would disclose evidence of" the violation (or, as in this case, evidence that defendant has violated a condition of his release). *Id.* at 67. Additionally, the officer must be able to identify the specific violation suspected, rather than have a mere hunch that the person has engaged in generally criminal activity. *See State*

*v. Maciel-Figueroa*, 361 Or 163, 179, 389 P3d 1121 (2017) (holding that such specificity is required when articulating grounds for reasonable suspicion).

Because it requires an even lower quantum of proof than the reasonable grounds standard, our case law under the reasonable suspicion standard is instructive. An officer cannot reasonably suspect that a defendant possesses drugs unless the officer can articulate specific reasons as to why the drugs suspected are in a certain location. In *State v. Davis*, 286 Or App 528, 537, 400 P3d 994 (2017), the defendant showed signs of intoxication from recent drug use. In addition to the alleged intoxication, the defendant gave the officer "suspicious" travel plans, engaged in suspicious movements, and was in a location associated with drug activity. *Id.* From those facts, we concluded that the investigating officer did not articulate facts sufficient to establish reasonable suspicion of drug possession. *Id.* Although we agreed with the state that each of those facts should have been given some weight in a reasonable suspicion analysis, we explained that, together, they did not provide a basis to suspect that the defendant currently possessed the drugs on or near his person. *Id.* at 538.

Here, none of the facts that Scaglione articulated, separately or in combination, provided reasonable grounds to request defendant's consent to search. First, we have consistently held that evidence of a person's current intoxication, alone, is not sufficient to support reasonable suspicion— let alone "reasonable grounds." *See State v. Schmidtz*, 299 Or App 170, 178, 448 P3d 699 (2019) (evidence of intoxication alone is not sufficient for reasonable suspicion); *State v. Miller*, 267 Or App 382, 393, 340 P3d 740 (2014) (same); *State v. Farrar*, 252 Or App 256, 261, 287 P3d 1124 (2012) (same). But neither Scaglione nor Galinski even suspected that defendant was intoxicated—just that he had admitted to using methamphetamine two days earlier. That evidence, by itself, does not relate to defendant's *current* drug possession, and it should have been afforded even less weight than we typically give to evidence of current intoxication.

Second, although a defendant's criminal history is *relevant* in a reasonable suspicion/reasonable grounds

analysis, it is afforded only "minimal" weight. *State v. Bertsch*, 251 Or App 128, 135, 284 P3d 502 (2012); *see also State v. Frias*, 229 Or App 60, 66, 210 P3d 914 (2009) (holding that there was no reasonable suspicion when the defendant was waiting to be sentenced on a drug charge, appeared to have used drugs in the past, and was evasive in response to questioning). Although knowledge of defendant's convictions for possession-related crimes may have been slightly more relevant than "minimally" in light of his admission to using two days earlier, it was not enough to support reasonable grounds to believe that defendant *currently possessed* methamphetamine.

Finally, on this record, defendant's association with Bafunda should have been given minimal, if any, weight. There was no evidence presented that Bafunda had any convictions for possessing or distributing drugs, let alone that he had been recently involved with providing them to (or using them with) defendant. To be sure, a defendant's association with someone known to be involved in criminal activity can sometimes be a factor in reasonable suspicion and, therefore, in a reasonable grounds analysis. *See, e.g.*, *State v. Clink*, 270 Or App 646, 651, 348 P3d 1187, *rev den*, 358 Or 69 (2015) (considering association with known drug dealers to be a factor in reasonable suspicion analysis, but not dispositive). However, the officer must articulate with specificity the reasons why an associate would increase the likelihood that the defendant has committed a specific crime. *See State v. Holdorf*, 355 Or 812, 823, 333 P3d 982 (2014) (emphasizing the importance of an officer's articulation of specific facts when finding reasonable suspicion). A generalized belief that a person is involved in criminal activity, even if that belief is reasonable, is not connected to the specific crime of methamphetamine possession. *State v. Sherman*, 274 Or App 764, 775-76, 362 P3d 720 (2015). Moreover, prior associations with someone actually known to be involved in methamphetamine possession do not support reasonable suspicion—much less reasonable grounds—that defendant possessed methamphetamine at the time of the encounter. *State v. Zumbrum*, 221 Or App 362, 369, 189 P3d 1235 (2008).

Defendant's history of drug possession together with his acknowledgement of recent drug use do not give rise to reasonable grounds to request his consent to search his person or his car at the time of the stop. The state failed to show that Scaglione and thus, Galinski, had reasonable grounds to believe that defendant violated his release agreement by possessing methamphetamine, or that a search of defendant's car would reveal evidence of such a violation.

Reversed and remanded.