Argued and submitted January 26, 2021, reversed and remanded June 2, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ALEXANDER PERRY McKIBBEN,
*Defendant-Appellant.*

Washington County Circuit Court
18CR51781; A170095

512 P3d 464

Defendant appeals from a judgment of conviction for unlawful possession of methamphetamine, assigning error to the trial court's denial of his motion to suppress. He argues that the police officer seized him without reasonable suspicion when the officer asked defendant for his identification, and while retaining it, asked defendant to reveal the contents of his bag. *Held*: The Court of Appeals concluded that defendant was unlawfully seized before the police officer saw the methamphetamine evidence. Accordingly, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.

Ronald D. Grensky, Judge.

Erik Blumenthal, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Shannon T. Reel, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, and Kamins, Judge, and Joyce, Judge.*

JOYCE, J.

Reversed and remanded.

_____
 * Joyce, J., *vice* Lagesen, C. J.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for unlawful possession of methamphetamine, assigning error to the trial court's denial of his motion to suppress.[1] Defendant argues that the police officer unlawfully seized him, leading to the discovery of methamphetamine. We agree and, accordingly, reverse and remand.

## FACTUAL BACKGROUND

We state the facts consistently with our standard of review. *State v. Davis*, 286 Or App 528, 529, 400 P3d 994 (2017). We are bound by the trial court's findings so long as they are supported by the record. *Id.* If the trial court has not made an express factual finding, we presume that the trial court found the facts in a manner consistent with its ultimate conclusion. *Id.* Officer Gregston was on patrol at 3:20 a.m. around a Walmart parking lot in Tigard. He noticed a car with an out-of-state license plate parked near the entrance to the parking lot.[2] The Walmart has posted a sign that prohibits overnight camping, and Tigard has a municipal ordinance that prohibits camping within the city limits. Walmart employees had previously asked police to enforce Walmart's overnight camping ban.

Gregston spotted two people sitting in the parked car, awake. Although there was no indication that the occupants were living out of the car, Gregston was concerned that they were disobeying the no camping order and trespassing. He thus circled around and parked behind the car in a way that did not block the car's exit. As he drove up, Gregston thought the occupants appeared startled to see him, and he saw defendant put a small bag near the center of the car. Gregston approached the car on foot with his flashlight and patrol car's spotlight on, but no siren or overhead lights.

In a "casual" tone, Gregston identified himself and asked the driver and defendant, who was in the passenger

---

[1] Defendant also assigns error to the trial court's imposition of court-appointed attorney fees and a felony fine. Because we reverse the trial court's order denying defendant's motion to suppress, we do not reach those claims of error.

[2] There were between 25 and 50 other vehicles in the parking lot.

seat, what they were doing in the parking lot. The driver stated that the car had overheated and that they were waiting "until they could drive away when it was cooled off, or they were waiting for a friend or something like that." Gregston thought the answer did not make sense because it was 65 degrees at the time, and he did not see smoke emanating from the car's engine block.

Gregston then asked the driver and defendant for identification, which they gave to him.[3] While holding defendant's identification card, Gregston told defendant, "I noticed you had a bag in your hand." Gregston asked defendant "if he'd be willing to just open that up and show me what was inside." Defendant did so, revealing what appeared to be methamphetamine pipes. Gregston then returned to his car to conduct a records check on the identification cards. After defendant's record came back clean, Gregston returned to the parked car. Gregston proceeded to ask defendant about the methamphetamine pipes and the amount of methamphetamine that he had in the car. Defendant made incriminating statements, and Gregston ultimately found a jar with a large rock of methamphetamine inside defendant's backpack.

The state charged defendant with unlawful possession of methamphetamine. Before trial, defendant moved to suppress all evidence derived from the encounter, including evidence of methamphetamine and defendant's statements, arguing that Gregston lacked reasonable suspicion to justify a stop under Article I, section 9, of the Oregon Constitution.[4] Specifically, defendant argued that Gregston stopped him

---

[3] Gregston initially testified that he could not recall exactly when he obtained defendant's identification, but after defendant attempted to refresh his recollection, he conceded that it was "more likely than not" that he asked for the identification *before* he asked about defendant's bag. Gregston also testified that he "felt comfortable testifying to receiving" defendant's identification before he asked about the bag. Although the trial court did not make specific findings on that fact, the state agrees for purposes of this appeal that Gregston requested the identification before asking about defendant's bag. Gregston testified that he had retained the identification throughout the duration of the stop.

[4] Article I, section 9, provides: "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

when he asked defendant for his identification, retained it, and then asked defendant to reveal the contents of his bag. Defendant argued that at that point, Gregston lacked reasonable suspicion that defendant was in possession of illegal drugs and the stop was therefore unlawful.

The trial court denied the motion to suppress, concluding that Gregston did not seize defendant until after he discovered the methamphetamine pipes in defendant's bag.

On appeal, defendant renews his argument that Gregston stopped him without reasonable suspicion when he questioned defendant and asked him to reveal the contents of the bag. The state responds that, under the totality of the circumstances, the interaction between Gregston and defendant did not implicate Article I, section 9, until after Gregston saw methamphetamine pipes in defendant's bag, at which point Gregston had reasonable suspicion of unlawful possession. Conversely, the state does not argue that Gregston had reasonable suspicion to stop defendant before the discovery of the pipes or that the evidence sought to be suppressed was the unattenuated product of that alleged unlawful seizure. Thus, our review turns on whether Gregston stopped defendant before or after Gregston discovered the methamphetamine pipes. For the reasons set forth below, we agree with defendant that Gregston seized him before Gregston saw the methamphetamine pipes and thus conclude that the trial court erred in denying defendant's motion to suppress.

## ANALYSIS

Article I, section 9, of the Oregon Constitution protects against unreasonable searches and seizures. Given the infinite variety of encounters between police officers and individuals, "'[n]ot every such encounter constitutes a "seizure" of the [individual]' for constitutional purposes." *State v. Fair*, 353 Or 588, 593, 302 P3d 417 (2013) (quoting *State v. Holmes*, 311 Or 400, 406-07, 813 P2d 28 (1991)). The police-civilian encounters typically fall into one of the three categories. *State v. Ashbaugh*, 349 Or 297, 308-09, 244 P3d 360 (2010). At one end are "mere conversations," which are noncoercive encounters that do not implicate constitutional

concerns, while at the other end are "'arrests,' which are restraints on an individual's liberty" that require probable cause. *Id.* In the area between those two ends are "stops." *Id.* Stops are seizures for constitutional purposes that can be justified by reasonable suspicion of criminal activity. *Id.*

Analytically, what distinguishes seizures—either stops or arrests—from encounters that are mere conversations "is the imposition, either by physical force or through some show of authority, of some restraint on the individual's liberty." *State v. Backstrand*, 354 Or 392, 399, 313 P3d 1084 (2013) (internal quotation marks omitted). The test is an objective one: a person is "seized" for purposes of Article I, section 9, in either one of two situations: "(a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) if a reasonable person under the totality of the circumstances *would* believe that (a) above has occurred." *Ashbaugh*, 349 Or at 316 (emphasis in original; footnote omitted). Because the latter part of the test depends on the totality of the circumstances, the question for us "is whether the circumstances as a whole transformed the encounter into a seizure," even if the circumstances individually would not create a seizure. *State v. Anderson*, 354 Or 440, 453, 313 P3d 1113 (2013).

In answering that question, we consider "the content of the questions [asked by a police officer], the manner of asking them, or other actions that police take (along with the circumstances in which they take them)." *State v. Charles*, 263 Or App 578, 583, 331 P3d 1012 (2014) (brackets in original; internal citation and quotation marks omitted); *see also State v. Highley*, 354 Or 459, 473, 313 P3d 1068 (2013) (given the context, even if none of an officer's individual actions amount to a stop, the actions "[i]n combination" may transform "what began as a mere encounter into a stop").

With those legal principles in mind, we turn to the facts of this case. We first note that Gregston's initial conduct—approaching the car with a flashlight and asking what defendant and the driver were doing in the parking lot—did not effectuate a seizure. Even if Gregston

inconvenienced defendant, his initial conduct did not constitute a show of authority that would cause a reasonable person to believe that the police officer was exercising his authority to coercively detain the person. *See State v. Moats*, 251 Or App 568, 574-75, 284 P3d 568 (2012) (concluding that officer did not stop defendant by approaching his parked car and stating his concern that defendant might be trespassing, then asking questions about suspicious behavior of another occupant during the contact); *see also Ashbaugh*, 349 Or at 317 (officer may ask questions that a person ordinarily would not ask another without effecting a seizure).

However, Gregston's conduct transformed what began as a mere encounter into a stop almost immediately. Of particular significance is that Gregston requested—and retained—defendant's identification and then began asking defendant questions about the contents of the bag. The confluence of those facts, in context, would have communicated to a reasonable person in defendant's position that he was not free to "terminate the encounter or otherwise go about his or her ordinary affairs" before he responded to Gregston's questioning. *Backstrand*, 354 Or at 401.

To be sure, the Supreme Court has emphasized that neither a mere request for identification, nor briefly holding a person's identification to check its validity, necessarily transforms an encounter into a stop. *Id.* at 416 (no stop where a police officer takes the person's identification card and retains it for a reasonable time to verify it); *Highley*, 354 Or at 470 (same). As the Supreme Court explained in *Highley*, a person who cooperates with an officer's request for identification reasonably "can expect that the officer will do something with that identification, such as seek to verify the person's identity or status." *Id*. It is thus generally not an exercise of coercive police authority if "the officer either retains the identification for a reasonable time" while verifying it, or "swiftly returns the identification and uses information from it" for purposes of verification. *Id*.

Yet here, Gregston did not proceed with verifying the identification or asking any questions about the identification, as a person would reasonably expect; rather, he retained the identification and questioned defendant about

the contents of the bag. *State v. Thompson*, 264 Or App 754, 760-62, 333 P3d 1125 (2014) (stop was unlawful when police officer told the defendant that he suspected that drug activity was occurring on the premises and asked her if she was a drug user, while retaining her identification); *State v. Painter*, 296 Or 422, 425, 676 P2d 309 (1984) (concluding police officer had seized the defendant when the officer questioned defendant about the location of his vehicle, while retaining his driver license and credit cards). *Cf. State v. Dierks*, 264 Or App 443, 451, 332 P3d 348 (2014) (concluding police officer did not stop the defendant by asking for his identification and running a records check on the defendant's name, but emphasizing that "the officer did not question defendant about her possible acquaintance with the subjects of any [criminal] investigation"). In this case, a reasonable person in defendant's position would understand that Gregston's retention of defendant's identification while questioning him was a show of authority that restrained his "liberty or freedom of movement." *Ashbaugh*, 349 Or at 316.

We thus conclude that defendant was stopped before Gregston saw methamphetamine pipes in the bag. Accordingly, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.