Submitted April 11, affirmed November 16, 2022, petition for review denied March 30, 2023 (370 Or 827)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ALEXANDRA ANN THIER,
*Defendant-Appellant.*

Marion County Circuit Court
18CR49064; A174999

521 P3d 175

Defendant challenges her convictions for unlawful possession of a firearm, ORS 166.250, and escape in the third degree, ORS 162.145, arguing that the trial court erred in denying her motion to suppress. She contends that the trooper's actions and words significantly restrained her freedom of movement, and, as a result, she was seized without legal justification for purposes of Article I, section 9, of the Oregon Constitution. The state argues that defendant was not seized and that the interaction was a mere encounter that did not require constitutional justification. *Held*: Under the totality of the circumstances, the trooper's actions and words were not sufficiently coercive so as to convey to a reasonable person that their freedom of movement was significantly restrained. Accordingly, because defendant was not seized, the trial court correctly denied defendant's motion to suppress.

Affirmed.

Daniel Joseph Ahern, Senior Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Peter G. Klym, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Powers, Presiding Judge, and Lagesen, Chief Judge, and Hellman, Judge.

POWERS, P. J.

Affirmed.

## POWERS, P. J.

Defendant appeals her convictions for unlawful possession of a firearm, ORS 166.250, and escape in the third degree, ORS 162.145, assigning error to the trial court's denial of her motion to suppress evidence. On appeal, defendant renews her argument that she was unjustifiably "seized" or "stopped" for purposes of Article I, section 9, of the Oregon Constitution. She contends that, under the totality of the circumstances, including the officer's actions and words, it was reasonable for her to believe that she was under criminal investigation, and thus, that her freedom of movement was significantly restrained. As explained below, we conclude that defendant was not seized; thus, the trial court did not err in denying defendant's suppression motion. Accordingly, we affirm.

We review the denial of a motion to suppress for legal error. *State v. Kamph*, 297 Or App 687, 689, 442 P3d 1129 (2019). In so doing, a trial court's findings of historical fact are binding on appellate courts if there is constitutionally sufficient evidence in the record to support those findings. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). Because determinations of whether a person has been seized under Article I, section 9, are factually driven, and "a slight difference in circumstances could make what was considered a nonrestrictive encounter in one case a stop in another," we begin with a brief recitation of the facts. *State v. Reyes-Herrera*, 369 Or 54, 67, 500 P3d 1 (2021).

Oregon State Police Trooper Nelson was patrolling a truck stop where frequent criminal activity occurred when he noticed defendant's car parked with the back-end open, a visor covering the front windshield, and the driver's side door open. Wearing his uniform and badge, Nelson got out of his car and approached just as defendant stepped out of the driver's side of her car. Nelson greeted defendant, "asked her what was going on," and told her that law enforcement "had a lot of problems in the area." He asked defendant if she "had her ID with her, with her by chance." Defendant said that she did and reached into the car and grabbed her purse off of the front passenger seat. As defendant was looking through her purse for her ID, Nelson noticed a "meth

pipe in open view" with crystalline residue on the passenger seat where the purse had been. After seeing the pipe, Nelson handcuffed defendant and placed her in the back of his vehicle. Nelson conducted a search incident to arrest and found a loaded handgun in defendant's purse. Defendant later escaped from Nelson's vehicle but was apprehended soon afterward.

Encounters between law enforcement and citizens fall into one of three categories that correlate the degree of intrusiveness to the degree of justification for the intrusion. *State v. Backstrand*, 354 Or 392, 399, 313 P3d 1084 (2013) (describing the spectrum to include a "mere encounter" (which requires no justification), a stop or seizure (which generally requires reasonable suspicion), and an arrest (which requires probable cause)). Both parties agree that, upon approaching defendant and asking for her ID, Nelson did not have reasonable suspicion or probable cause. Thus, this case turns on whether Nelson's interaction with defendant amounted to a stop or seizure.

Under Article I, section 9, a seizure occurs when "(1) a law enforcement officer intentionally and significantly interferes with an individual's liberty or freedom of movement; or (2) a reasonable person, under the totality of the circumstances, would believe that his or her liberty or freedom of movement has been significantly restricted." *Reyes-Herrera*, 369 Or at 58. We have emphasized that an officer's actions are not to be analyzed independently; rather, the actions and words of the officer are viewed in their totality to determine whether a reasonable person would believe that the officer significantly deprived the individual of his, her, or their freedom of movement. *State v. Charles*, 263 Or App 578, 584-85, 331 P3d 1012 (2014). Thus, our analysis considers the sum of the content of the officer's questions, the manner of asking them, the officer's actions, and the circumstances under which the actions are taken. *State v. McKibben*, 320 Or App 26, 30, 512 P3d 464 (2022).

Nelson made statements and asked questions of defendant that, defendant argues, significantly restricted her freedom of movement and constituted a seizure. Specifically, Nelson greeted defendant, "asked her what was going on,"

told her that they "had a lot of problems in the area," and asked if she had her ID "with her by chance." The Oregon Supreme Court has explained that law enforcement officers are free to approach people in public spaces and request information or question them—without it amounting to a seizure for purposes of the state constitution—even where the person is discomforted by the officer's presence. *State v. Anderson*, 354 Or 440, 450, 313 P3d 1113 (2013) (observing that law enforcement officers remain free to approach persons on the street or in public places without being called upon to articulate a certain level of suspicion in justification "even though the person approached may be discomforted by an officer's inherent authority as such and, for reasons personal to the individual, feel inclined or obliged to cooperate with the officer's request" (citing *Backstrand*, 354 Or at 400-02)). Such an encounter between an officer and individual may become a stop, however, where the officer "makes a direct and unambiguous accusation" that the individual committed a crime. *State v. Nelson*, 294 Or App 793, 797, 433 P3d 370 (2018). But the officer can make "statements conveying possible suspicion" or general "inquir[ies] about criminal activity," without necessarily converting the encounter into a stop. *Id*. In this case, Nelson asking, "what was going on" and his statements about problems in the area, if anything, adhere more closely with the latter than the former. We recognize that the line between a mere encounter and a seizure does not solely depend on whether the officer "made a declarative statement or asked a question, or whether the officer's comments fit the textbook definition of an accusation." *Reyes-Herrera*, 369 Or at 61-62. Therefore, Nelson's initial statements must be considered in conjunction with his actions, and his request for defendant's identification, to determine whether they were sufficient—in the totality of the circumstances—to cause a reasonable person to believe that their freedom of movement was significantly restrained.

As an initial matter, a request for identification does not automatically turn an encounter into a seizure. *Backstrand*, 354 Or at 417. Even retaining the identification, for a short period to check its validity, is not sufficient to do so. *Id*. Rather, to turn an encounter into a seizure, a

request to produce identification must be coupled with police action that is sufficiently coercive so as to convey to a reasonable person that they are detained. *Id. See, e.g.*, *State v. McKibben*, 320 Or App 26, 512 P3d 464 (2022) (holding that the defendant was seized where the officer approached the defendant's parked vehicle, asked for and retained his ID, and then proceeded to question him about the contents of a bag in the defendant's car); *State v. Newton*, 286 Or App 274, 398 P3d 390 (2017) (holding that the defendant was seized where the officer approached the defendant in his parked van, asked for and retained his ID, and then questioned the defendant's girlfriend behind the van while running a background check on the defendant); *State v. Thompson*, 264 Or App 754, 333 P3d 1125 (2014) (holding that the defendant was seized where the officer retained her ID for an unspecified period of time, told her that he suspected drug activity, and asked why she was there and if she was a drug user).

This case is distinct from those cases where an officer requested an identification in such a manner that was sufficiently coercive to rise to the level of a seizure. Although Nelson's approach and initial statements to defendant could have conveyed suspicion of criminal activity, he did not directly accuse defendant. Moreover, Nelson's request that defendant provide identification was not coupled with any coercive actions, and he did not retain her ID and proceed with further questioning. Indeed, Nelson saw the meth pipe—and thus had reasonable suspicion—before defendant even handed over her ID. Nothing else about the manner in which Nelson asked his questions, nor the physical actions that he took, were sufficiently coercive so as to convey to a reasonable person that they were detained. Accordingly, under the totality of the circumstances, Nelson's actions and words did not significantly restrain defendant.

As the Supreme Court has acknowledged, "the line between a mere encounter and something that rises to the level of a seizure does not lend itself to easy demarcation." *State v. Fair*, 353 Or 588, 595, 302 P3d 417 (2013) (internal quotation marks omitted). In this case, because Nelson's actions and words did not rise to a degree of intrusiveness requiring constitutional justification, we hold that the

circumstances fall within the category of a mere encounter. Accordingly, the trial court correctly denied defendant's motion to suppress.

Affirmed.