No. 44    January 23, 2025    465

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

VALERIA VILLASENOR-SIBRIAN,
*Defendant-Appellant.*

Marion County Circuit Court
20CR29476; A177342

Donald D. Abar, Judge.

Argued and submitted August 28, 2024.

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Pagán, Judge, and Mooney, Senior Judge.

MOONEY, S. J.

Affirmed.

## MOONEY, S. J.

Defendant rear-ended another vehicle while driving intoxicated, setting a series of collisions into motion, resulting in one death and several injuries. A jury convicted defendant of second-degree manslaughter, ORS 163.125, driving under the influence of intoxicants (DUII), ORS 813.010, two counts of third-degree assault, ORS 163.165, three counts of fourth-degree assault, ORS 163.160, and four counts of recklessly endangering another person, ORS 163.195. Defendant assigns error to the trial court's denial of her motion to suppress evidence developed at the scene of the collision. Defendant argues, in particular, that she had a constitutional right to privacy in the back of the ambulance where she and her passenger were sitting when the responding police officer opened the door. In defendant's view, the officer's act of opening the ambulance door constituted an unlawful search that was not supported by a warrant or probable cause. Moreover, defendant argues that she was unlawfully seized when, in the absence of reasonable suspicion, the officer asked her to step out of the ambulance to speak with him. Finally, defendant argues that she was questioned in compelling circumstances without *Miranda* warnings and that subsequent questioning by another officer after providing defendant *Miranda* warnings did not cure the taint of the earlier questioning. She requests reversal and remand for a new trial.

We conclude that defendant did not have a constitutional right to privacy in the back of the ambulance where she was located and that the officer did not conduct a search by opening the door to that ambulance. *See State v. Cromb*, 220 Or App 315, 325-27, 185 P3d 1120, *rev den*, 345 Or 381 (2008) (holding in an analogous setting that there is no "constitutionally protected privacy interest for the temporary occupants of a hospital emergency room" who undergo treatment "even [in] a curtained-off portion" of the emergency room). Our decision is consistent with *Cromb*, which remains good law today. Further, we reject defendant's argument that she was seized when the officer asked her if they could speak outside. Finally, we conclude that defendant was not entitled to *Miranda* warnings during that conversation because the circumstances were not compelling. We affirm.

"We review a trial court's denial of a motion to suppress for legal error, and are bound by the court's express factual findings if evidence in the record supports them." *State v. Davis*, 286 Or App 528, 529, 400 P3d 994 (2017) (citing *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993)). "We presume that the [trial] court found the facts in a manner that is consistent with its ultimate conclusion." *Cromb*, 220 Or App at 317-18. We state the following pertinent facts, either undisputed or as drawn from the record, in accordance with our standard of review.

Defendant was the designated driver at the conclusion of an evening that she and a friend spent celebrating the friend's birthday in Portland. They left Portland, travelling south on Interstate 5. Defendant was intoxicated and driving at an excessively high rate of speed when she rear-ended another southbound vehicle. Her rate of speed at the time of impact was 124 miles per hour. The vehicle she rear-ended was travelling at 70 miles per hour. A forensic scientist estimated that defendant's blood alcohol content at the time of the collision was between .106 percent and .163 percent. The impact sent the other vehicle through the cable barrier in the median strip between the north and southbound lanes of the interstate, into the line of on-coming northbound traffic where it collided with multiple other vehicles. The driver of the vehicle that defendant rear-ended did not survive the collision and several others were seriously injured.

Oregon State Police Sergeant Zohner arrived at the scene about an hour after the collision occurred and was briefed by the Marion County deputies who were present. Zohner began conducting a "crash investigation." He had learned that the driver and passenger of the vehicle thought to have rear-ended the second vehicle were in an ambulance at the north end of the crash site. Zohner decided to interview the driver and he proceeded to the ambulance.

The ambulance doors were closed when Zohner arrived, and so he opened up the rear doors and saw a medic speaking with defendant and her passenger. Defendant was not receiving medical treatment at that time. Zohner noted a strong odor of alcohol in the back of the ambulance where defendant and her passenger were sitting on a bench seat.

The passenger admitted that she was intoxicated, that the vehicle was hers, and that defendant had been driving. Defendant said that she was the designated driver and Zohner asked her if they could speak outside. At that point, defendant followed Zohner outside of the ambulance. During their five-to-seven-minute conversation, defendant responded to Zohner's questions, and said that she and her friend had been out celebrating her friend's birthday, that defendant had consumed two beers at about 9:00 p.m. but none since then, and that she did not know what happened in the collision. She did not see any vehicles when "all of a sudden the airbags deployed." Defendant returned to the ambulance. Zohner noticed that defendant was slightly unsteady on her feet and that her speech was "thick-tongued" during that conversation.

Zohner believed he had reasonable suspicion to investigate defendant for DUII and reckless driving. He spoke with Oregon State Trooper Noack and asked him to conduct a DUII investigation. Noack went to the ambulance. The doors were open at that point, and he asked defendant if she would step outside to speak with him. She did so. Noack advised defendant of her *Miranda* rights and told her that he was recording their conversation. He smelled alcohol on defendant's breath and noted that her eyes were glassy. They spoke for about 15 to 20 minutes. Defendant consented to a blood draw and field sobriety tests (FSTs). Noack conducted the FSTs, and a drug recognition expert (DRE) was called to the scene. The DRE repeated one of the FSTs, and they then transported defendant to the hospital for a blood draw. Defendant also consented to provide a urine sample and to take a breath test. When asked, defendant admitted to drinking one 32-ounce beer and most of a second, and to taking a "key dip" of cocaine that night.

We begin with defendant's argument that she had a right to privacy—that is, a right to be free from government scrutiny—inside the ambulance in which she was sitting and that Article I, section 9, of the Oregon Constitution thus protected her from Zohner's intrusion into that right when he opened the ambulance doors without probable cause or a warrant. "For purposes of Article I, section 9, a search

occurs when governmental action invades a protected privacy interest." *State v. Lien/Wilverding*, 364 Or 750, 759, 441 P3d 185 (2019) (internal quotation marks omitted). "[T] he right to privacy protected by Article I, section 9, is the freedom from scrutiny as determined by social and legal norms of behavior[.]" *Id.* at 760 (internal quotation marks and emphases omitted).

This case is similar to *Cromb*, in which we held that a "[police] officer's presence and observations in the area of the emergency room where [the] defendant was being treated did not constitute a search for purposes of Article I, section 9." 220 Or App at 327. We explained that a hospital emergency room is "not a private place." *Id.* at 326. It was significant to our analysis in *Cromb* that "hospital personnel—not [the] defendant himself—had control over who was present" in the emergency room, because "privacy interests can be recognized only by their association with a *private* place where the claimant has the right to exclude others." *Id.* at 325 (emphasis in original). A person like defendant who is present in the back of an ambulance following a serious motor vehicle collision has no more right to restrict access to the ambulance than she would have to restrict access to an emergency room where she might be evaluated and treated. We note that the medic who was in the ambulance with defendant did not ask Zohner to wait outside or otherwise restrict his access to the emergency vehicle.

We recognize that social and legal norms generally protect a person's interest in maintaining the confidentiality of their personal health and medical information. *See, e.g.*, ORS 192.553(1)(a) (setting forth the policy "that an individual has * * * [t]he right to have protected health information of the individual safeguarded from unlawful use or disclosure"); 45 CFR § 164.502 (2024) (setting forth Health Insurance Portability and Accountability Act (HIPAA) privacy regulations); OEC 504-1 (setting forth the physician-patient privilege). But such standards and norms readily incorporate corollary standards and norms that allow the disclosure of personal health information when, for example, disclosure is necessary for third-party billing, treatment activities, and hospital operations. *See, e.g.*, ORS

192.558 (listing permissible use or disclosure of protected health information). And the fact that an individual has some limited control over their medical records and information does not create a right in the individual—for purposes of Article I, section 9—to restrict access to the back of an ambulance where they may be present in emergency circumstances such as here.

We turn to defendant's argument that she was seized under Article I, section 9, when Zohner asked her to speak with him outside the ambulance. Whether an individual has been seized in the sense that the person is entitled to protection under Article I, section 9, is a fact-driven question. *State v. Reyes-Herrera*, 369 Or 54, 58, 67, 500 P3d 1 (2021). The answer in any given case depends on the unique constellation of facts present, with each one to be weighed and assessed for its significance in the overall picture. *See State v. Thier*, 322 Or App 680, 681-82, 521 P3d 175 (2022), *rev den*, 370 Or 827 (2023) (explaining that the analysis of whether a seizure occurred under Article I, section 9, "considers the sum of the content of the officer's questions, the manner of asking them, the officer's actions, and the circumstances under which the actions are taken"). "[T]here are an infinite variety of encounters between law enforcement and individuals, but only some of those encounters implicate the state constitutional protection against unreasonable seizures." *State v. True*, 324 Or App 621, 625, 527 P3d 42, *rev den*, 371 Or 477 (2023).

The focus of the Article I, section 9, inquiry is to determine "whether a reasonable person would believe that the officer significantly deprived the individual of his, her, or their freedom of movement." *Thier*, 322 Or App at 682. We conclude that Zohner's request to speak with defendant outside the ambulance, and the conversation itself, did not rise to the level of an investigatory detention. The request was not in the form of a directive, the encounter was low-key and brief, and any reasonable person would have understood that they were able to terminate the encounter if they wished to do so. *See Reyes-Herrera*, 369 Or at 58 ("For an encounter to constitute a seizure, something more than just asking a question, requesting information, or seeking an

individual's cooperation is required." (Internal quotation marks omitted.)).

Finally, for similar reasons, we reject defendant's argument that she was in compelling circumstances when Zohner questioned her. The circumstances outside the ambulance were not any more compelling than if the questioning had occurred while defendant was lying in a "hospital bed in a hallway outside the emergency department[.]" *State v. Miller*, 336 Or App 606, 607, 610, ___ P3d ___ (2024) (concluding "that the circumstances of the police encounter in the hospital hallway were not compelling").

Affirmed.